Filed 9/29/15  P. v. Gurr CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C076461 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CRF06260, CRF093686, CRF132760) |
| v. | |
| WILLIAM GURR, | |
| Defendant and Appellant. | |

Defendant William Gurr pleaded no contest to possession of ammunition by a prohibited person (Pen. Code, § 30305, subd. (a)), thereby admitting violations of probation in two prior cases, in exchange for a stipulated sentence of four years four months.[1]  Later, defendant sought to withdraw his plea on the grounds that (1) he was not able to read the plea form because he did not have his reading glasses, (2) he was not able to hear his trial counsel's whispered explanation of the plea form, and (3) he was

---

[1]  Undesignated statutory references are to the Penal Code.

misadvised that he would be able to withdraw his plea prior to sentencing. The trial court denied defendant's motion.

On appeal, defendant contends the trial court abused its discretion in denying his motion to withdraw the plea. In the alternative, defendant contends trial counsel was ineffective in failing to adequately advise him of the consequences of his plea. We shall affirm the judgment.

## BACKGROUND

On March 1, 2010, defendant pleaded no contest to driving under the influence and other violations of the Vehicle Code in two separate cases and was placed on felony probation for five years with a suspended aggregate prison term of three years eight months. Defendant was prohibited from owning or possessing a firearm as a condition of probation.

A probation search of defendant's residence was conducted on July 14, 2013. During the search, contraband was discovered underneath defendant's mattress.

On July 17, 2013, a complaint was filed charging defendant with three counts as follows: (1) assault with a deadly weapon (§ 245, subd. (a)(1); count 1), (2) possession of a firearm by a person previously convicted of a felony (§ 29800, subd. (a)(1); count 2), and (3) possession of ammunition by a person prohibited from owning or possessing a firearm (§ 30305, subd. (a); count 3). A declaration for order and order regarding violation of probation was also filed, and defendant's probation was revoked.

On July 30, 2013, defendant and the prosecution reached a conditional plea agreement. The conditional plea agreement was memorialized on a form entitled "Declaration and Order Regarding Plea of Guilty/No Contest to a Felony." Defendant signed the plea form under penalty of perjury and initialed various lines indicating that he understood the contents of the form and the consequences of his plea. For example, defendant initialed a line stating, "I am not suffering any mental disease or defect, which keeps me from understanding this form." Defendant also initialed a line stating, "I

2

understand and have discussed the nature of the charge(s), enhancement(s), and any prior conviction(s) against me, and the possible defenses thereto with my attorney and understand the consequences of my plea." Defendant also initialed a line stating, "My attorney has explained to me that if the court refuses to accept the above-stated agreement, I will be allowed to withdraw my plea." Defendant also initialed a line stating, "My lawyer explained this form and its entire contents to me and I understand what I have said in this Declaration and the consequences thereof." Defendant also initialed a line stating, "I agree there is a factual basis for this plea."

The plea form includes a "Defense Attorney's Declaration" in which defendant's trial counsel, Teal Dixon, represented that, "I have gone over this form with my client and have explained the foregoing rights to the defendant and answered all the defendant's questions with regard to this plea. I have discussed the facts of this case with the defendant and explained the consequences of the plea(s), the elements of the offense(s), and the possible defenses. To the best of my knowledge and belief, the defendant understands the matters set forth in this declaration and each of the statements herein is accurate and true, and is voluntarily and understandingly made."

During the change of plea hearing, the trial court examined the plea form and confirmed the parties' understanding of the plea agreement. The trial court then questioned defendant, and the following colloquy occurred:

"THE COURT: [Defendant], I'm going to ask you a few questions before I take the plea.

"The plea form has initials and a signature. Are those your initials and your signature?

"THE DEFENDANT: Yes.

"THE COURT: Did you have enough time to review this plea form and discuss all this with your attorney?

"THE DEFENDANT: Yes.

3

"THE COURT:  Did Ms. Dixon answer all your questions?

"THE DEFENDANT:  Yes.

"THE COURT:  Do you have any questions for the Court?

"THE DEFENDANT:  No."

Defendant then conferred with his trial counsel, Dixon.  Following an off-the-record discussion, Dixon explained that defendant had some questions about presentence custody credits.  Dixon noted that credits would be determined later by the probation department, and the trial court concurred.  The trial court asked whether defendant had any other questions.  Defendant responded that he did not.  The trial court then confirmed defendant's understanding of the plea agreement, asking again whether defendant had any questions.  Defendant again responded that he did not.

Defendant then entered his plea.  The prosecutor offered the following factual basis for the plea:  "On the date listed in the Complaint . . . in the County of Yolo, and subsequent to a disturbance that occurred at a location in West Sacramento involving this defendant, a probation search was conducted upon his residence and inside the residence the listed contraband was discovered underneath the defendant's mattress in his bedroom."  Defendant's trial counsel, Dixon, stipulated to the factual basis for the plea.

The trial court then accepted defendant's plea, stating:  "The Court further finds that the defendant does understand his rights, he understands the nature of the crime charged and he understands the consequences of his plea.

"The Court finds that the defendant has knowingly, intelligently, understandingly and voluntarily pled and has waived such rights and the right to have the charge read in full."

Approximately six months later, defendant, now represented by new trial counsel, filed a motion to withdraw his plea.  The motion was accompanied by defendant's unsworn statement, which says that defendant only met with Dixon once for 20 minutes prior to the change of plea hearing.  Defendant met Dixon a second time at the change of

4

plea hearing. According to defendant's statement, "I was brought into Court chained to 6 or 7 other people. I was very confused, and did not understand the charges or probation violations. . . . [Dixon] told me she would speak to the DA and get back to me. She went back and forth several times, and spoke with me, and then several other prisoners that she also represented. I expressed that I did not understand what I was going to plea too [*sic*] or why. I did not have my reading glasses and could not read what she wanted me to initial and sign. I told her that, so in court she whispered what I was initialing and signing, I could not hear her, and told her I was not happy and did not understand why I was getting 4 years and 4 months in State Prison. She said this was as good as it was going to get and I should take the deal. She said I would be released, and that the plea was conditional, I could withdraw my plea anytime before sentencing, so I initialed and signed the form, and took the deal."

Defendant also suggested that Dixon might have failed to advise him of his potential maximum sentence. According to defendant, "I don't recall her telling me what the worst I could get was." Defendant also averred that he discovered several mistakes in his probation report, which he brought to Dixon's attention during a third (and apparently final) meeting prior to sentencing. "During this whole process," defendant concluded, "I have only spent 1 to 1½ hours with Ms. Dixon and have never had a full understanding of what I have pled to and am being sentenced for."

During the hearing on the motion to withdraw the plea, defendant's new counsel also challenged the factual basis for the plea, arguing that the factual basis failed to specify that defendant was prohibited from possessing firearms or ammunition.

The trial court denied the motion to withdraw the plea, stating: "First of all, with regard to the issue concerning the factual basis, the Court is satisfied that there is a sufficient factual basis stated as well as within the purview of the Court. The Court can certainly take judicial notice of its own files. The Court had the files before it at the time of the taking of the factual basis, and it is pretty clear from the Court's own files that

5

[defendant] is a person prohibited from owning or possessing a firearm based on the files before the Court.

"With regard to the plea, I have carefully reviewed the motion, and I've reviewed the transcript of the plea proceedings . . . . I also have before me the actual waiver of rights and plea form in this case.

"Based on the questions asked in the form and the questions propounded by the Court, the Court is convinced that the plea in this case was given with an understanding of the consequences knowingly, intelligently and voluntarily. The Court tries to be pretty careful in taking a plea to make sure the defendant is giving a plea knowingly, intelligently and voluntarily with an understanding of what's going on. I am convinced that that is what occurred in this case."

The trial court then denied probation and sentenced defendant to an aggregate term of four years four months in state prison for all three cases.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I.

### *The Motion to Withdraw the Plea*

Defendant contends the trial court abused its discretion in denying his motion to withdraw his no contest plea. We disagree.

Section 1018 provides, in relevant part: "On application of the defendant at any time before judgment . . . the court may . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice." Although this section refers to pleas of "guilty," it also applies to pleas of no contest. (See, e.g., *People v. Brown* (1986) 179 Cal.App.3d 207, 213.)

Mistake, ignorance, and any other factor overcoming defendant's free judgment, such as inadvertence, fraud, or duress, constitute good cause to justify withdrawal of a

6

guilty plea.  (*People v. Huricks* (1995) 32 Cal.App.4th 1201, 1208.)  But good cause to withdraw a plea "must be shown by clear and convincing evidence."  (*People v. Cruz* (1974) 12 Cal.3d 562, 566 (*Cruz*).)  "A plea may not be withdrawn simply because the defendant has changed his mind.  [Citation.]"  (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456.)

The ruling on a motion to withdraw a guilty or no contest plea rests in the sound discretion of the trial court.  On appeal, this court must adopt the trial court's factual findings if substantial evidence supports them.  Moreover, the reviewing court will sustain the trial court's ruling unless the defendant demonstrates that the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner, resulting in a manifest miscarriage of justice.  (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; *People v. Shaw* (1998) 64 Cal.App.4th 492, 496.)

In determining whether the statutory grounds are present, the trial court on a contested motion to withdraw a plea of guilty under this section is the exclusive judge of credibility.  (*People v. Caruso* (1959) 174 Cal.App.2d 624, 636.)  It is "not bound to accept and give credence to the affidavits submitted in support of the motion" (*ibid.*) and " 'is not required to accept as true the sworn testimony of a witness, even in the absence of evidence contradicting it, and this rule applies to an affidavit.  Further, the trial court as trier of the fact, is the judge of the credibility of the witness whether he testify in person or by affidavit.'  [Citations.]"  (*Ibid.*)

With these principles in mind, we turn to defendant's contentions.  Defendant complains that he only met with Dixon twice, "once at arraignment and once for 20 minutes about a week before the date set for the preliminary hearing."  However, during the change of plea hearing, defendant expressly acknowledged that he had enough time to review the plea form with his counsel.  The trial court was entitled to rely on defendant's assurance that he had enough time to review the plea form with counsel.

7

Defendant also complains that he could not read the plea form without his reading glasses and could not hear Dixon's whispered reading of the form. However, defendant represented under penalty of perjury that he understood the contents of the plea form and consequences of the plea. Dixon likewise represented that she reviewed the contents of the plea form with defendant, apprised him of the potential consequences of his plea, and satisfied herself that "defendant understands the matters set forth in this declaration and each of the statements herein is accurate and true, and is voluntarily and understandingly made." And defendant assured the trial court three times at the change of plea hearing that he did not have any questions. Here too, the trial court was entitled to rely upon defendant's assurances and could reasonably conclude that defendant's representations on the plea form, which were corroborated by Dixon's declaration, were more credible than his subsequent claim that he did not understand the plea form or the consequences of his plea. (*People v. Quesada* (1991) 230 Cal.App.3d 525, 533 ["the trial court . . . is the trier of fact and hence the judge of the credibility of the witnesses or affiants."]; *People v. Hunt* (1985) 174 Cal.App.3d 95, 104 ["Where two conflicting inferences may be drawn from the evidence, it is the reviewing court's duty to adopt the one supporting the challenged order."].)

Defendant also suggests that Dixon led him to believe he could withdraw his conditional plea any time before sentencing. According to defendant's written statement, "She said I would be released, and that the plea was conditional, I could withdraw my plea anytime before sentencing, so I initialed and signed the form, and took the deal." Defendant's statement is ambiguous as to whether Dixon affirmatively misrepresented that defendant's conditional plea could be withdrawn before sentencing, or whether defendant erroneously assumed that the term "conditional plea" refers to a plea capable of being withdrawn at the defendant's election. In any case, the trial court was not required to accept defendant's claim that he was confused as to the meaning of the term "conditional plea," particularly since defendant (1) represented under penalty of perjury

8

that Dixon had explained to him that he could withdraw his plea if the trial court refused to accept the plea agreement, and (2) assured the trial court that no one had made any promises to him other than those set forth in the plea form, which does not say anything about withdrawing a conditional plea for any other reason.

Finally, defendant complains that he was not informed of several of the direct consequences of his plea. Specifically, defendant claims he was not informed of the potential maximum sentence in his case, possible fines and penalty assessments, the maximum parole period he might serve following completion of any prison term, absolute or presumptive probation ineligibility, or the fact that a no contest plea is the legal equivalent of a guilty plea. None of these claims was properly raised in the trial court. Defendant's unsworn statement says, equivocally, "I don't recall [Dixon] telling me what the worst I could get was." Defendant's statement stops short of saying that Dixon failed to advise him of the potential maximum sentence and says nothing whatsoever about any alleged failure to advise him of the other consequences of his plea. As we have already discussed, defendant represented under penalty of perjury that Dixon explained the consequences of his plea, and Dixon corroborated defendant's representation. The trial court was entitled to rely on the representations in the plea form.

Defendant has failed to demonstrate by clear and convincing evidence that good cause existed to withdraw his plea. (§ 1018; *Cruz*, *supra*, 12 Cal.3d at p. 566.) We therefore perceive no abuse of discretion in the trial court's decision to deny defendant's motion to withdraw his plea.

## II.

### *Ineffective Assistance of Counsel*

Next, defendant contends he received ineffective assistance of counsel from Dixon. According to defendant, Dixon stipulated to an inadequate factual basis for the plea, overlooked errors in the probation report, failed to advise him of the consequences

of his plea, and erroneously advised him that he could withdraw his plea at any time. Defendant's claims lack merit.

"Plea bargaining and pleading are critical stages in the criminal process at which a defendant is entitled, under both the Sixth Amendment to the federal Constitution and article I, section 15 of the California Constitution, to the effective assistance of legal counsel." (*In re Resendiz* (2001) 25 Cal.4th 230, 239 (*Resendiz*).) "It is well settled that where ineffective assistance of counsel results in the defendant's decision to plead guilty, the defendant has suffered a constitutional violation giving rise to a claim for relief from the guilty plea." (*In re Alvernaz* (1992) 2 Cal.4th 924, 934 (*Alvernaz*).)

In *Hill v. Lockhart* (1985) 474 U.S. 52 [88 L.Ed.2d 203], the United States Supreme Court held the two-part test pronounced in *Strickland v. Washington* (1984) 466 U.S. 668 [80 L.Ed.2d 674] applies to challenges to guilty pleas based on ineffective assistance of counsel, with minor modifications (*Hill*, at pp. 58-59). Under the modified test, a defendant has the burden to prove by a preponderance of the evidence that (1) his or her counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) he or she suffered prejudice from counsel's deficient performance, i.e., "there is a reasonable probability that, but for counsel's errors, he [or she] would not have pleaded guilty and would have insisted on going to trial." (*Id*. at p. 59; see also *Resendiz, supra*, 25 Cal.4th at pp. 239, 248-254.)

A defendant's claim that he or she would not have pleaded guilty had the defendant received effective assistance of counsel " 'must be corroborated independently by objective evidence.' " (*Resendiz, supra*, 25 Cal.4th at p. 253, quoting *Alvernaz, supra*, 2 Cal.4th at p. 938.) "A defendant's statement to that effect is not sufficient. Rather, there must be some objective showing." (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1140.)

In evaluating trial counsel's actions, "[a] court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance."

10

(*People v. Dennis* (1998) 17 Cal.4th 468, 541.) The constitutional test for counsel's performance is " 'reasonableness,' viewed from counsel's perspective at the time of his challenged act or omission. [Citations.]" (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1243-1244.)

Defendant claims Dixon "was ignorant of the relevant facts and applicable law at the time she advised him to accept the plea deal, [as] shown both by her stipulation to an inadequate factual basis [fn. omitted] at the time of the plea itself, and again after the plea when [defendant] found several errors in the probation report, one of which was a DUI [driving under the influence] prior which had never occurred." We consider these contentions in turn.

First, defendant contends the factual basis for the plea was inadequate because it "did not include any facts about ammunition or that [defendant] was prohibited from possessing it, both essential elements of the charge to which he was pleading no contest." However, defendant represented that there was a factual basis for the plea when he signed and initialed the plea form. Furthermore, we conclude that any objection to the factual basis for the plea would have been unlikely to succeed, in light of the fact that Dixon's successor raised the same objection without success. Accordingly, we reject defendant's claim that Dixon rendered ineffective assistance of counsel by stipulating to an inadequate factual basis.

We also reject defendant's claim that Dixon rendered ineffective assistance by failing to discover an alleged error in the probation report, namely, a prior DUI conviction that appeared on defendant's rap sheet in error. As the People observe, the probation report had yet to be prepared at the time defendant entered into the plea agreement. Accordingly, Dixon would not have relied on the erroneous probation report in advising defendant to enter into the plea agreement, and defendant could not have been induced to enter into the agreement by Dixon's allegedly deficient performance in failing to discover the error sooner. The fictitious DUI conviction was not alleged in the

11

complaint and did not serve to increase defendant's potential maximum sentence, making the error immaterial to the parties' plea negotiations. Furthermore, Dixon objected to the probation report upon discovering the error, thereby demonstrating reasonable diligence. On this record, we conclude that Dixon's performance was not deficient and defendant was not prejudiced.

Next, defendant claims that Dixon was ineffective because she spent very little time with him and misadvised him that he could withdraw his conditional plea at any time. As we have previously discussed, both of these claims are belied by defendant's contrary representations in the plea form and during the plea colloquy. Furthermore, defendant's written statement does not say that defendant would not have entered into the plea agreement had he spent more time with Dixon or gained a clearer understanding of the significance of his conditional plea. Defendant merely states that he was confused by the process and unhappy with the outcome. Defendant's feelings, though perhaps understandable, do not establish a reasonable probability that defendant would have rejected the plea agreement and insisted on proceeding to trial had Dixon taken more time with him or ensured that he had a clear understanding of the significance of his conditional plea.

Because defendant's statement fails to establish prejudice, we need not reach the question whether independent evidence corroborates defendant's self-serving contentions. Nevertheless, we note that defendant's claim to have retained new counsel "for the express purpose of filing a motion to withdraw his plea based on counsel's ineffectiveness" does not find support in the record. Defendant's statement says that he "looked into hiring an attorney to defend me and explain what was happening to me, as [he] was not getting this from [his] Public Defender." Although defendant's statement establishes his dissatisfaction with Dixon, it does not establish a reasonable probability that defendant would not have entered the plea but for Dixon's supposedly deficient performance. On this record, we conclude that defendant has failed to show prejudice,

12

even assuming arguendo that Dixon's performance was deficient.  We therefore reject defendant's claim of ineffective assistance of counsel.

## DISPOSITION

The judgment is affirmed.


                                        _____RAYE_____, P. J.


We concur:



_____HULL_____, J.



_____BUTZ_____, J.