[No. C007937. Third Dist., May 23, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO BONILLA QUESADA, Defendant and Appellant.

## Counsel

Lawrence M. Cobb for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Jane N. Kirkland and Jane L. Lamborn, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**SPARKS, J.**—Penal Code section 1016.5 mandates the criminal courts, before accepting a plea of guilty or nolo contendere to most crimes, to advise the defendant of the consequences a conviction may have on a person who is not a citizen of the United States. The statutory admonition reads: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Pen. Code, § 1016.5, subd. (a).) Under terms of this statute, "the court shall administer the . . . advisement on the record to the defendant."[1] The principal issue in this appeal is whether the

[1] Penal Code section 1016.5 provides, in pertinent part:

"(a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:

"If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

"(b) Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section. If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from

statute may be satisfied by an advisement which is contained in a written "plea form" executed by the defendant but is not given orally by the magistrate. We hold that under appropriate circumstances, such as those present in this case, it may. We shall therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged in a felony complaint with sale of cocaine, a controlled substance. (Health & Saf. Code, § 11352.) Before a preliminary hearing commenced, defense counsel told the magistrate that defendant would plead guilty as charged on the conditions he would not be sentenced to prison and that certain related charges would not be filed. In informing the court that defendant would plead guilty, counsel stated he had "a plea agreement form which I've gone over with my client."

Defense counsel was referring to a "Declarations and Order Regarding Plea of Guilty to Felony." This plea form specified defendant's constitutional rights, informed him of the conditional nature of the plea agreement under section 1192.5, and stated the maximum punishment for the offense.

Regarding possible immigration consequences, the plea form stated, "14. I understand that if I am not a citizen, a plea of GUILTY to an offense for which I have been charged may result in my deportation, exclusion from admission to the United States, or denial of naturalization, pursuant to the laws of the United States."

---

admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty . . . and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea. It is also the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction. It is further the intent of the Legislature that at the time of the plea no defendant shall be required to disclose his or her legal status to the court."

Further statutory references are to the Penal Code unless noted otherwise.

The plea form further recited that "[m]y lawyer explained this form and its entire contents to me and I understand what I have said in this Declaration and the consequences thereof." The plea form was executed by defendant under penalty of perjury.

Attached to the plea form was a "Declaration by Defendant's Attorney." There counsel declared that he explained to defendant his "constitutional rights as set forth in his Declaration and the consequences of a GUILTY (or no contest) plea," as well as "[t]he foregoing Declaration by defendant and its contents." Counsel also declared he witnessed defendant execute the plea form.

Defendant and his counsel were thereafter examined by the municipal court judge in open court as follows:

"THE COURT: . . . . [¶] Have you had a chance to review that form?

"THE DEFENDANT: Yes.

"THE COURT: Do you have any questions?

"THE DEFENDANT: No.

"THE COURT: You understand it?

"THE DEFENDANT: Yeah.

"THE COURT: On page 4, there is a signature. Is that your signature?

"THE DEFENDANT: Yes.

"THE COURT: Have you gone over this with your client very carefully?

"MR. ALCAUSKAS [defense counsel]: Yes, your Honor.

"THE COURT: Do you believe he understands the form?

"MR. ALCAUSKAS: Yes."

". . . . . . . . . . . . . . . . . . . . . . . .

"THE COURT: Do you have any questions about what I've said to you at this point?

"The Defendant: No."

Defendant waived his constitutional rights, and the following colloquy occurred:

"The Court: Any issues as to immigration in this case?

"Mr. Alcauskas: Not that I'm aware of."

Later, however, the court observed that "there's also a hold, I believe." In fact, the probation report, filed one month later in the superior court, stated that according to the sheriff's department "there has been a Border Patrol hold placed against" defendant.

After having been advised of his statutory and constitutional rights in this fashion, defendant pled guilty as charged and was certified to the superior court. (§ 859a, subd. (a).) The superior court accepted the plea, suspended imposition of sentence and granted probation. At the sentencing hearing, defense counsel asked the court to consider the fact that if defendant were deported he would be unable to pay any fine or penalty assessment. The court replied: "Well, that's understood."

■■ ■■ Represented by a different attorney, who continues to represent him on appeal, defendant later moved pursuant to section 1016.5, subdivision (b), to vacate the judgment, set aside his guilty plea and for permission to plead not guilty.[2] The motion was made on the ground that

---

[2]As the high court has noted, "[a]lthough a motion to change a plea of guilty must ordinarily be made before judgment is pronounced (Pen. Code, § 1018), both motions to vacate the judgment and petitions in the nature of *coram nobis* may be addressed to the trial court after judgment, if there has been no affirmance on appeal (Pen. Code, § 1265)." (*People* v. *Wadkins* (1965) 63 Cal.2d 110, 113 [45 Cal.Rptr. 173, 403 P.2d 429].) Thus, "a motion to set aside a judgment of conviction and for permission to withdraw a plea of guilty may ordinarily be considered as a petition for writ of error *coram nobis*, . . ." (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 594, fn. 5 [114 Cal.Rptr. 250, 522 P.2d 1058].) But in this case, judgment had not been rendered. Instead, imposition of judgment had been suspended and defendant placed on probation. Although an order granting probation where imposition of sentence has been suspended "is 'deemed to be a final judgment' for the limited purpose of taking an appeal therefrom (Pen. Code, § 1237, subd. 1), it does not have the effect of a judgment for other purposes. As expressly provided in such an order, the criminal proceedings have been 'suspended' prior to the imposition of judgment and pending further order of the court . . . . [¶] As no judgment had been entered [petitioner's] motion [to withdraw his plea and 'vacate the judgment of guilty'] is governed by Penal Code section 1018, which provides that a guilty plea may be withdrawn before judgment and for good cause shown." (*People* v. *Superior Court* (*Giron*) 11 Cal.3d 793, 796 [114 Cal.Rptr. 596, 523 P.2d 636], some citations omitted.) Section 1016.5, subdivision (b), on the other hand, authorizes the court to "vacate the judgment" on defendant's motion. Although no judgment has been entered in this case, the guilty plea may nevertheless be withdrawn according to the terms of the statute. Conse-

before the acceptance of his guilty plea, the court failed to advise him of the immigration consequences of a guilty plea in accordance with subdivision (a) of section 1016.5.

At the hearing on the motion, defendant testified his former attorney explained "some of" the plea form, but not paragraph 14, the one explaining the immigration consequences. But on cross-examination he admitted that his former attorney read the entire plea form to him because defendant "couldn't read them well, you know." Defendant also conceded he now remembered nothing of what his former attorney told him about his plea.

After signing the plea form, "when we went to . . . [t]he first court I had to be in," defendant asked his former attorney if entering the plea would cause him to be deported, and the attorney said he did not think so. Defendant further testified he did not "really read very well English, the Spanish more," although he had lived in the United States for the past 11 years and had an 11th grade education from a California high school.

He testified that when he signed the plea form he was unaware there might be immigration consequences or that he had immigration problems.[3] He has since been summoned by an immigration judge to show cause why he should not be deported for his conviction in the present case.[4]

---

quently, this case is governed by section 1018, and to the extent that it is factually applicable, by section 1016.5, and not by the rules governing writs of *coram nobis*.

Nevertheless, in a writ of *coram nobis* case which preceded the enactment of section 1016.5, the appellate court held that mistakes over the defendant's status as an alien and his deportation upon conviction met the three necessary requirements for relief on the writ. (See *People* v. *Shipman* (1965) 62 Cal.2d 226, 230 [42 Cal.Rptr. 1, 397 P.2d 993].) There counsel's declaration asserted that had he known of defendant's alien status he would have sought some disposition of the marijuana case that would not have been grounds for deportation and that the court would not have rendered the judgment had it known of defendant's alien status and the possibility of deportation. The reviewing court held that the alleged facts, if true, stated grounds for relief on a petition for writ of error *coram nobis*. (*People* v. *Wiedersperg* (1975) 44 Cal.App.3d 550, 554-555 [118 Cal.Rptr. 755].)

[3]After defendant testified, a continuance was granted so he could secure the presence of his former attorney. At the continued hearing, defense counsel represented that defendant's former attorney had claimed the attorney-client privilege and refused to testify. Despite the adverse inferences which might be reasonably drawn from this refusal, the trial court stated that it was "not drawing any conclusions whatever or any inferences from the fact that Mr. Alcauskas [former defense counsel] chooses to exercise what he believes is an attorney-client privilege not to testify."

[4]An alien is deportable if he "is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy or attempt to violate, any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)); . . ." (8 U.S.C. § 1251 (a)(11).)

Cocaine is listed as a controlled substance under the federal Controlled Substances Act. (21 U.S.C. § 802.)

Defense counsel also argued at the hearing that defendant's former attorney's statement that he knew of no immigration consequences resulted in "some confusion" as to what immigration consequences might exist.

Based upon the evidence before it, the trial court found that defendant had been "fully informed under the law of the possible consequences of noncitizenship if he's convicted of a crime . . . ." Accordingly, the court denied the motion.

## DISCUSSION

Section 1016.5, subdivision (b), provides that if the court fails to give the requisite admonition and the conviction may have the consequence of defendant's deportation, exclusion from admission or denial of naturalization, "the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." ■ In determining whether the statutory grounds are present, the trial court on a contested motion to withdraw a plea of guilty under this section, like those under section 1018, is the trier of fact and hence the judge of the credibility of the witnesses or affiants. Consequently, it must resolve conflicting factual questions and draw the resulting inferences. (*People* v. *Caruso* (1959) 174 Cal.App.2d 624, 636 [345 P.2d 282].) ■ As is the case with most other evidentiary rulings by a trial court, we apply the substantial evidence rule on appellate review. (See *People* v. *Duck Wong* (1976) 18 Cal.3d 178, 188 [133 Cal.Rptr. 511, 555 P.2d 297].) Under this rule, we "must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. . . . If the circumstances reasonably justify the trial court's findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding." (*People* v. *Mosher* (1969) 1 Cal.3d 379, 395 [82 Cal.Rptr. 379, 461 P.2d 659]; accord *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1236-1237 [278 Cal.Rptr. 640, 805 P.2d 899].) Thus, as we are required to read the appellate record, defendant was advised by his counsel of the possible consequences which might flow from his conviction as a noncitizen. Consequently, the issue before us is not whether defendant was in fact apprised of the immigration consequences of his conviction but whether he must have been advised *orally* of those consequences by the judge receiving his plea. It is in that evidentiary light that we consider defendant's contentions.

■ Defendant contends that section 1016.5 "states, in plain terms, that the *court* must give the advisement. Had the Legislature intended that the requirements of Section 1016.5 to be satisfied by an advisement in a Plea

Form, it would and could have so stated in [section 1016.5]. However, the Legislature made no such alternative provision in [section 1016.5], thereby intending that the court must verbally advise the defendant, in the language provided for by Section 1016.5, before it can accept the defendant's plea."[5] (Italics in original.) Defendant further asserts the claimed error in not orally advising him of the immigration consequences of his plea "was compounded by" his trial counsel's statement he was aware of no immigration consequences. Defendant argues his counsel's statement "misled [him] and must have certainly countered any written advisement contained in the Plea Form which [he] signed."

Defendant presumes, but makes no attempt to show, that the phrase "the court" as used in section 1016.5 means "the judge." Although it is true that the words "court" and "judge" are used interchangeably in common parlance and in some statutes, the word "court" has multiple meanings. "Court" sometimes refers to "the place where the court is held, sometimes the tribunal itself, and sometimes the individual presiding over the tribunal, and in many cases is used synonymously, as well as interchangeably, with 'judge'; and, whether the act is to be performed by the one or the other, is generally to be determined by the character of the act, rather than by such designation." (*Von Schmidt* v. *Widber* (1893) 99 Cal. 511, 513 [34 P. 109]; *People* v. *Smith* (1986) 182 Cal.App.3d 1212, 1219 [228 Cal.Rptr. 277]; cf. *Richmond* v. *Shipman* (1976) 63 Cal.App.3d 340, 343 [133 Cal.Rptr. 742].) Contrary to defendant's contention, because of the numerous meanings of the term "court," there is an inherent ambiguity in the language of section 1016.5.[6] As a prime example of the various usages of the term, one need only cite *People* v. *Peters* (1978) 21 Cal.3d 749 [147 Cal.Rptr. 646, 581 P.2d 651]. In *Peters*, the California Supreme Court held that a magistrate was not a "court" within the meaning of Penal Code section 1385, a statute which provided that a court may dismiss an action in the furtherance of justice. Given this inherent ambiguity over the meaning of the term "court," we shall proceed to resolve it.

■ "As in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of

---

[5]We do not understand defendant to raise any contention regarding the actual content of the written advisement.

[6]Other portions of the statute are equally unilluminating on the question of who must give the advice and whether it must be given orally. In some instances the statute refers to the failure "to advise" and in others to the failure to "provide the advisement." Thus, at one point subdivision (b) refers to situations where "the court fails to advise the defendant as required by this section" and in another to a situation where the record fails to show "that the court provided the advisement required by this section." Subdivision (c) similarly refers to "a court's failure to provide the advisement." Moreover, subdivision (d) simply declares the legislative intent that pleas of guilty "be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea."

the statute." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].) In determining such intent, "we begin, as always, with the language of the statute itself." (*Rojo* v. *Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) Thus, "we look first to the words of the statute themselves, giving them their usual and ordinary meaning." (*City of Santa Cruz* v. *Municipal Court* (1989) 49 Cal.3d 74, 90 [260 Cal.Rptr. 520, 776 P.2d 222].) "If the words, given their ordinary and popular meaning, are reasonably free from uncertainty there is no need for construction, and we may not indulge in it." (*Comite de Padres de Familia* v. *Honig* (1987) 192 Cal.App.3d 528, 532 [237 Cal.Rptr. 517]; see also *Rojo* v. *Kliger, supra*, 52 Cal.3d 65, 73.)

But where, as here, "a word of common usage has more than one meaning, the meaning which will best attain the purposes of the statute under consideration should be adopted." (*People* v. *Pitmon* (1985) 170 Cal.App.3d 38, 49 [216 Cal.Rptr. 221]; *Gipe* v. *Superior Court* (1981) 124 Cal.App.3d 617, 626 [177 Cal.Rptr. 590].)

The purpose of section 1016.5 is manifest. Subdivision (d) of that statute expressly provides, "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered *without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization* pursuant to the laws of the United States. *Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea.* It is also the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction. It is further the intent of the Legislature that at the time of the plea no defendant shall be required to disclose his or her legal status to the court." (Italics added.)

 We conclude that the legislative purpose of ensuring a defendant is aware of the possible immigration consequences of a guilty plea and is given sufficient time to consider the choice of plea, is best and most reasonably served by construing the word "court" as used in section 1016.5 to refer to the tribunal in which defendant enters his plea. Under this construction, the advisement referred to therein may be given through any of the numerous

individuals acting on behalf of that tribunal, including the judge, counsel, the court reporter, or the clerk. So long as the legislative purpose is advanced by having some person acting on behalf of the tribunal actually advise defendant of the immigration consequences of his plea and that advice is reflected "on the record," the actual adviser is immaterial. Indeed, it is common practice for the prosecutor or defense counsel, rather than the judge, to advise the defendant of his rights and the consequences of a guilty plea, including the immigration consequences, and to elicit the necessary waivers of those rights. (See, e.g., *People* v. *Valenciano* (1985) 165 Cal.App.3d 604, 605 [211 Cal.Rptr. 651]; Cal. Criminal Trial Judges' Benchbook (1988) Change of Plea, § 7.G, pp. 279-280 ["By the Court or District Attorney: . . . 18. If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Do you understand that?"] The construction advanced by defendant, on the other hand, would exalt form over substance and would place an unnecessarily restrictive burden on our trial courts. After all, the dispositive question is whether the defendant has been advised of the immigration consequences of his plea as required by the statute, not who gave the admonition. "The critical issue under section 1016.5 is whether a defendant has been advised that his guilty plea may have immigration consequences." (*People* v. *Barocio* (1989) 216 Cal.App.3d 99, 105 [264 Cal.Rptr. 573]; accord *People* v. *Soriano* (1987) 194 Cal.App.3d 1470, 1475 [240 Cal.Rptr. 328, 65 A.L.R.4th 705].)

Nor need the statutory admonition be given orally. It is sufficient if, as here, the advice is recited in a plea form and the defendant and his counsel are questioned concerning that form to ensure that defendant actually reads and understands it. Our conclusion is fortified by case law rulings that a court may discharge its duty to ensure a defendant in a criminal case is made aware of his or her constitutional rights before accepting a guilty plea (see *In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449]) by employing a properly executed waiver form. (*In re Ibarra* (1983) 34 Cal.3d 277 [193 Cal.Rptr. 538, 666 P.2d 980].) Even in such cases, where "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable" (*Boykin* v. *Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 280, 89 S.Ct. 1709]), a plea form is sufficient (*In re Ibarra, supra*, 34 Cal.3d 277, 286).

In *Ibarra*, the California Supreme Court concluded "[t]he underlying purpose of the *Boykin* and *Tahl* rules is to ensure that defendant is actually informed of his rights, and has an opportunity to make an intelligent choice

to plead guilty. A sufficient waiver form can be a great aid to a defendant in outlining those rights. The defense attorney, who is already subject to a duty to explain the constitutional rights outlined in a proper waiver form to his client prior to the client's entering a plea, may even find it desirable to refer to such a form. Thus, a defendant who has signed a waiver form upon competent advice of his attorney has little need to hear a ritual recitation of his rights by a trial judge. The judge need only determine whether defendant had read and understood the contents of the form, and had discussed them with his attorney. . . . [¶] . . . So long as the waiver form contains sufficient information, and both the defendant and his counsel attest to its valid execution, the judge may, in his discretion, dispense with further explanation to the defendant of his rights." (34 Cal.3d at pp. 285-286.)

This same analysis has been applied by other courts construing comparable legislation. Thus, for example, in *Lyons* v. *Pearce* (1985) 298 Ore. 554, 561 [694 P.2d 969, 974], the Oregon statute required that the "court shall inform the defendant" of the immigration consequences of a guilty plea.[7] The defendant had signed a plea agreement form which contained on its face a written warning of the immigration consequences of his plea. Nevertheless, on appeal defendant argued that under this statute "the judge must inform defendants orally of this possible consequence of a judgment of conviction." (*Id.* at p. 562 [694 P.2d at p. 974].) The Oregon Supreme Court rejected the argument and held that defendant had been adequately advised under the statute. In the view of that court, the statute "does not require the trial court to address a defendant orally about the possibility of deportation. It is sufficient if the court satisfies itself that a defendant has been so informed. [Defendant] here told the court that he could read and that he had, in fact, read the plea agreement containing the information regarding possible deportation and that he had, in fact, conferred with counsel. No more was required of the court." (*Id.* at pp. 561-562 [694 P.2d at p. 974].) In light of these authorities, we similarly conclude that defendant was adequately advised under section 1016.5 and not entitled to permission to withdraw his guilty plea pursuant to that statute.

 Defendant also contends "[t]he failure of the court to verbally advise [him] of the consequences of his plea relative to immigration was compounded by" his former counsel's statement that he was not aware of any immigration consequences of the plea. Because defendant was actually advised of the immigration consequences of his plea, section 1016.5 has no

---

[7]Under this statute, the court was mandated to inform the defendant that if he "is not a citizen of the United States conviction of a crime may result, under the laws of the United States, in deportation, exclusion from admission to the United States or denial of naturalization." (*Lyons* v. *Pearce, supra,* 298 Ore. at p. 561 [694 P.2d at p. 974].)

application and thus provides no authority to allow defendant to withdraw his guilty plea. And because the court suspended imposition of sentence and granted probation, and, therefore, had not entered judgment in this case (*People* v. *Superior Court* (*Giron*) *supra*, 11 Cal.3d 793, 796), defendant's remaining claim is governed by section 1018. (*Ibid.*)

■ Section 1018 provides that "[o]n application of the defendant at any time before judgment the court may, . . . for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." Under this statute, "mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. But good cause must be shown by clear and convincing evidence." (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250], citations omitted.) As we noted in *People* v. *Superior Court* (*Barke*) (1976) 64 Cal.App.3d 710 [134 Cal.Rptr. 704], "[t]he courts have consistently held that to permit a withdrawal of a plea under Penal Code section 1018 there must be a strong showing by defendant of good cause by 'clear and convincing evidence' of a proper ground. An attempt to set aside a plea without such evidence under section 1018 is an abuse of discretion." (*Id.* at p. 716, citation omitted.) Moreover, the granting of such a motion made by a defendant who entered his plea with counsel is discretionary with the court and we will not disturb the trial court's ruling in the absence of a clear demonstration of abuse of discretion. (*People* v. *Hernandez* (1979) 96 Cal.App.3d 856, 864 [158 Cal.Rptr. 434].)

*In People* v. *Superior Court* (*Giron*) *supra*, 11 Cal.3d 793, a case predating section 1016.5, the defendant moved to withdraw his guilty plea on the ground he was unaware of the immigration consequences of the plea. Our Supreme Court stated, "the [trial] court was properly vested with discretion to grant or to deny the motion after considering all factors necessary to bring about a just result. We would not necessarily conclude that a court abused its discretion if it either granted or denied a motion to set aside a plea of guilty on evidence that an accused was or was not aware of the possibility of deportation; the test of abuse in such circumstances is whether after consideration of all relevant factors there was good cause shown for granting the motion and whether justice would be promoted thereby." (*Id.* at p. 798.)

■ Unlike in *Giron*, the trial court in the present case concluded defendant was informed of the potential immigration consequences of his guilty plea. Given this critical finding, we cannot say the court thereby abused its discretion. Before entering his guilty plea, defendant testified he had an opportunity to review the plea form, and that he signed it and had no

questions about it. Defendant's former attorney stated he had discussed the plea form with defendant and he believed defendant understood it. The plea form contains defendant's declaration under penalty of perjury that his former attorney "explained this form and its entire contents to me and I understand what I have said in this Declaration and the consequences thereof."

Indeed, at the hearing on the motion to withdraw his guilty plea, defendant admitted on cross-examination that his former attorney read the entire plea form to him.[8] In denying the motion to withdraw defendant's guilty plea, the court impliedly rejected defendant's later testimony that he did not understand the plea form or the possibility of deportation. The court could reasonably conclude defendant's claim of limited understanding of English was inconsistent with the facts he had lived in the United States for about 11 years and that he had received an 11th grade education at Winters High School. Moreover, the court could form an opinion as to the level of defendant's understanding from his demeanor and the manner in which he responded to questions.

There is additional, circumstantial, evidence defendant was aware his guilty plea could result in deportation. At the end of the hearing on defendant's guilty plea, the court stated, "[T]here's also a hold, I believe." The probation report, dated about three weeks later, states that the sheriff's department had reported "there has been a Border Patrol hold placed against this Defendant." At the subsequent probation hearing, defendant's former attorney argued that if deported, defendant would be unable to pay any fines or penalty assessments. A permissible inference to be drawn with these facts is that defendant was aware of the risk of deportation at the time of his guilty plea. This case, then, is indistinguishable from *People* v. *Flores* (1974) 38 Cal.App.3d 484 [113 Cal.Rptr. 272]. In *Flores*, another case preceding section 1016.5, a resident alien who was represented by counsel pled guilty to a narcotics offense. Although the court was not aware of his alien status and did not advise him of any deportation possibilities, his counsel told him that he would be subject to deportation upon conviction but probably would not be deported. Defendant's motion to withdraw his plea under section 1018 was denied and he appealed. The reviewing court found no error and affirmed. "Here, there was no abuse of discretion. Flores was made aware of the possibility of deportation by his attorney before he entered the guilty plea. His only confusion concerned the degree of the risk." (*Id.* at p. 488.) The same may be said of this case and for the same reason we find no abuse of discretion.

---

[8]Defendant in fact contradicted his direct examination testimony that his former attorney "went over" only some of the plea form.

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Davis, J., concurred.