Filed 2/26/16  P. v. Benes CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAN BENES,<br><br>        Defendant and Appellant. | E062551<br><br>(Super.Ct.No. FMB700380)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Rodney A. Cortez, Judge.  Affirmed.

Commonwealth Law Group and James A. Fraser, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Meagan J. Beale, Parag Agrawal, and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Jan Benes pled guilty in 2007 to cultivating marijuana (Health & Saf. Code, § 11358).  Pursuant to the plea agreement, the remaining charge was dismissed and defendant was placed on probation on various terms and conditions, including serving 90 days in county jail on weekends.  Defendant successfully completed probation in 2010, his previous conviction was set aside, a plea of not guilty was entered, and the case was dismissed pursuant to Penal Code[1] sections 1203.4 and 1203.4a.

In 2014, defendant, a citizen of the Czech Republic, filed an unsuccessful motion to set aside his conviction based on ineffective assistance of counsel (IAC) pursuant to section 1016.5.  Defendant appeals from the denial of the motion, arguing that (1) the record is unclear as to whether the trial court at the time of his plea had adequately advised him of his immigration consequences; (2) his prior counsel was ineffective in advising him as to the immigration consequences; and (3) he established due diligence in pursuing his claims.  We find no error and affirm the order.

I

FACTUAL AND PROCEDURAL BACKGROUND[2]

In August 2007, defendant was found in possession of approximately 155 marijuana plants, a tray of harvested marijuana buds, and equipment used in the cultivation of marijuana.  Defendant admitted to cultivating marijuana.

---

[1]  All future statutory references are to the Penal Code unless otherwise stated.

[2]  The factual background is taken from the probation officer's report.

On August 16, 2007, a complaint was filed charging defendant with cultivation of marijuana (Health & Saf. Code, § 11358) and possession of marijuana for sale (Health & Saf. Code, § 11359).

On October 3, 2007, defendant entered into a negotiated plea agreement whereby he pled guilty to cultivating marijuana. In return, the remaining charge was dismissed and defendant was placed on probation on various terms and conditions for a period of three years.

On April 19, 2010, defendant filed a motion for early termination of probation and dismissal of the complaint pursuant to sections 1203.4 and 1203.4a. The motion was granted on May 21, 2010, at which time, the court terminated defendant's probation, set aside the previous conviction, entered a plea of not guilty, and dismissed the case.

On January 7, 2013, defendant received notice from the U.S. Department of Homeland Security that removal proceedings had been issued against him in immigration court based on his 2007 cultivation of marijuana conviction.

Defendant was eventually detained by Immigration and Naturalization Services. And, on June 13, 2013, in an attempt to fight the removal proceedings, defendant, in pro. per., filed a motion to vacate his conviction with supporting exhibits based on IAC. The court denied the motion for lack of jurisdiction on June 17, 2013.

On August 21, 2013, defendant, in pro. per., filed a second motion to vacate his conviction. On September 23, 2013, the trial court found the matter had already been reviewed on May 21, 2010.

On October 8, 2013, defendant, in pro. per., filed a third motion to vacate his conviction, but withdrew the motion prior to the October 23, 2013 hearing date.

On July 2, 2014, defendant, represented by counsel, filed a fourth motion for postconviction relief to vacate his plea and/or to modify his sentence with supporting declarations and exhibits.

On August 5, 2014, the People filed an opposition with supporting exhibits. The People argued that defendant failed to exercise due diligence and that defendant failed to meet his section 1016.5 claim because the record established defendant was advised of and understood his immigration consequences.

A hearing on defendant's motion was held on October 23, 2014. At that time, defendant's counsel argued that defendant did not "fully understand" the nature of his immigration consequences and that the trial court had failed to appropriately advise defendant of his immigration consequences. Following a recitation of the record, the trial court denied defendant's motion to vacate his conviction pursuant to section 1016.5. The court found defendant's plea agreement, the reporter's transcript, and the court's minute order established defendant was advised of his immigration consequences and that defendant understood his rights and had time to discuss his rights with his lawyer. The court also denied defendant's nonstatutory motion to vacate or petition for writ of error *coram nobis* based on IAC, because defendant failed to show reasonable due diligence.

4

On December 17, 2014, defendant filed a notice of appeal from the denial of his fourth motion to vacate his conviction, and a request for certificate of probable cause. Defendant's request for a certificate of probable cause was granted.

II

DISCUSSION

A.      *Advisement of Immigration Consequences*

Defendant contends that the trial court abused its discretion when it denied his motion to vacate his conviction and withdraw his plea under section 1016.5 because he was not adequately advised of the immigration consequences of the plea.

"Before accepting a plea of guilty or no contest, a trial court is statutorily required to advise a defendant that if the defendant is not a citizen of this country, the plea could result in deportation, exclusion from the United States, or denial of naturalization.  (Pen. Code, § 1016.5, subd. (a).)"  (*People v. Arriaga* (2014) 58 Cal.4th 950, 955 (*Arriaga*).) If the court fails to give the admonition required by subdivision (a), upon defendant's motion, it must vacate the judgment and allow the defendant to withdraw his or her plea and enter a plea of not guilty if the defendant can show that the conviction or offense to which he or she pleaded guilty or nolo contendere might result in his or her deportation, exclusion from admission to the United States, or in denial of naturalization.  (§ 1016.5, subd. (b).)

"To prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided

5

by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement." (*People v. Totari* (2002) 28 Cal.4th 876, 884; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192 (*Zamudio*).) The purpose of section 1016.5 is to ensure that a defendant has both actual knowledge of the possible adverse immigration consequences of a guilty or no contest plea and a chance to make an intelligent choice whether to plead guilty or no contest. (*Zamudio*, at pp. 193-194.)

A trial court's denial of a motion to vacate under section 1016.5 is reviewed for abuse of discretion. (*Zamudio*, *supra*, 23 Cal.4th at p. 192.) The court deciding whether the defendant has made a sufficient showing under section 1016.5 "is the trier of fact and . . . the judge of the credibility of the witnesses or affiants. Consequently, it must resolve conflicting factual questions and draw the resulting inferences. [Citation.]" (*People v. Quesada* (1991) 230 Cal.App.3d 525, 533 (*Quesada*), superseded by statute on other grounds as stated in *People v. Totari* (2003) 111 Cal.App.4th 1202, 1206-1207, fn. 5.) To the extent the court's denial is based on statutory interpretation, it is an issue of law which we review de novo. (*People v. Akhile* (2008) 167 Cal.App.4th 558, 562-563 (*Akhile*).)

At the October 3, 2007 plea hearing, the reporter's transcript is clear that the court itself never expressly advised defendant of his immigration consequences as required by section 1016.5. Rather, the court relied on the contents of the plea form to ensure

6

defendant received the relevant advisements.  At the plea hearing, the following colloquy occurred between defendant and the court:

"THE COURT:  [Defendant], I am showing you a three-page document that has the initials on the right-hand side 'JB.'

"Are those your initials?

"THE DEFENDANT:  Yes.

"THE COURT:  And on the last page right here is a signature.  Is this your signature?

"THE DEFENDANT:  Yes, your Honor.

"THE COURT:  Did you place your initials in the boxes and sign the third page only after you assured yourself you understand everything on this document?

"THE DEFENDANT:  Yes, I did.

"THE COURT:  Did you have enough time to review your rights, the evidence against you and any possible defenses you might have with your lawyer?

"THE DEFENDANT:  Yes, I did.

"THE COURT:  Do you need any more time or have any questions?

"THE DEFENDANT:  No.  [¶] . . . [¶]

"THE COURT:  Was anything else promised to you that is not on this [plea] form?

"THE DEFENDANT:  No.

7

"THE COURT:  You understand that all of the rights that are contained on this three-page form are rights that you are waiving and giving up so as to get the benefit of this bargain?

"THE DEFENDANT:  Yes, I do."

Following defendant's plea, the court found "the defendant's plea and waiver was done both orally and in writing; that he understands the nature and consequences of plea as well as each of his constitutional rights; further, that his plea and waiver was knowing, intelligent, free and voluntary; finally, that a factual basis exists for the plea."

The reporter's transcript of the plea hearing is clear that the court did not provide its own, separate admonition that defendant would be deported as a result of the plea.  It was simply presumed that the appropriate admonitions and advisements had been given by defendant's trial counsel.

In *Arriaga*, *supra*, 58 Cal.4th at page 963, our Supreme Court held that where the record does not reflect whether the court gave the section 1016.5 advisements at the time of the plea, the burden shifts to the People.  The "presumption of nonadvisement established by section 1016.5's subdivision (b) is controlling unless and until the prosecution rebuts it by proving it is more likely than not that the defendant *was* properly advised." (*Arriaga*, at p. 963.)  The question then becomes whether "the prosecution" carried "its burden of proving that defendant received the proper advisements." (*Ibid*.)

The People attempted to meet their burden by relying on defendant's signed guilty plea form under penalty of perjury with the advice of his counsel, defendant's statements

at the plea hearing, and the minute order of the plea hearing. In relevant part, defendant initialed the following immigration warning: "14. I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization will result from a conviction of the offense(s) to which I plead guilty/nolo contendere (no contest)." Defendant's counsel also signed the plea form, under penalty of perjury, indicating that she "personally read and explained the contents" of the plea form to defendant. As indicated above, during the plea hearing, defendant indicated that he understood and personally initialed the advisements on the plea form and that he discussed them with his attorney. Defendant's counsel joined in the plea. The minute order of the October 3, 2007 plea hearing notes, "The Court, after readvisement of each of these rights, finds that the Defendant understands the charge(s), the possible penalties, right against self-incrimination, to confront and cross examine witnesses, to a public and speedy trial, to Jury trial, to have an attorney present at all stages of the proceedings and to the Public Defender if indigent and to the compulsory process to the court to subpoena witnesses."

An attorney's private consultation with his or her client about immigration consequences is to be encouraged. But the immigration advisements required by section 1016.5 involve the court proceedings. (*Akhile*, *supra*, 167 Cal.App.4th at p. 564.) Those immigration advisements "must occur within the context of the taking of the plea." (*Ibid.*) In *Akhile*, the trial court gave the section 1016.5 advisements at the arraignment. But the Court of Appeal held that providing the section 1016.5 advisements at the

9

arraignment is not a substitute for the failure to give them when defendant pled guilty. In this case, there is no evidence the trial court gave a section 1016.5 advisement.

The People contend "there is no legislative or case law requirement that the defendant be verbally warned" and that "the required warning was properly provided to [defendant] in compliance with section 1016.5 in written form and [defendant] acknowledged that he understood all the conditions on the written form." In *People v. Ramirez* (1999) 71 Cal.App.4th 519 (*Ramirez*), the court concluded section 1016.5 does not require a trial court to orally advise a defendant of the possible immigration consequences of a guilty plea; the written change of plea form signed by the defendant satisfied the section 1016.5 requirements. (*Ramirez*, at pp. 521-523.) "[T]here is no language [in section 1016.5] which states the advisements must be verbal, only that they must appear on the record and must be given by the court." (*Id.* at p. 521.)

Citing *In re Ibarra* (1983) 34 Cal.3d 277 (*Ibarra*), the *Ramirez* court noted that the "Supreme Court has held a validly executed waiver form is a proper substitute for verbal admonishment by the trial court." (*Ramirez, supra*, 71 Cal.App.4th at p. 521.) Although the court in *Ibarra* expressly addressed the constitutionally mandated advisements required under *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*), *Ramirez* concluded its reasoning was equally applicable to legislatively mandated advisements. (*Ramirez*, at pp. 521-522.) Ramirez also stated, "As the Third Appellate District noted in *People v. Quesada*[*, supra,*] 230 Cal.App.3d 525, the legislative purpose of section 1016.5 is to ensure a defendant is advised of the

10

immigration consequences of his plea and given an opportunity to consider them. So long as the advisements are given, the language of the advisements appears in the record for appellate consideration of their adequacy, and the trial court satisfies itself that the defendant understood the advisements and had an opportunity to discuss the consequences with counsel, the legislative purpose of section 1016.5 is met. [Citation.] We agree with the analysis in *Quesada*." (*Id*. at p. 522.)

Because the record contained a copy of the change of plea form signed by the defendant, which warned of all three possible immigration consequences, and showed that the trial court asked the defendant whether he reviewed the form with his attorney and understood it, the *Ramirez* court affirmed the trial court's denial of the defendant's section 1016.5 motion. (*Ramirez, supra*, 71 Cal.App.4th at p. 523.)

According to *Ramirez*, neither the language nor the purpose of section 1016.5 requires a trial court to orally advise a defendant of the possible immigration consequences before accepting a guilty plea. Rather, a written change of plea form describing those possible immigration consequences may, if duly signed and understood by the defendant after having an opportunity to review it and ask questions of his counsel, satisfy the section 1016.5 requirements. As with the *Boykin-Tahl* rule discussed in *Ibarra*, the underlying purpose of section 1016.5 is to ensure the defendant has actual knowledge of the possible immigration consequences of a guilty plea and has had an opportunity to make an intelligent choice to plead guilty. (*Ibarra, supra*, 34 Cal.3d at p. 285; *Ramirez, supra*, 71 Cal.App.4th at p. 522; *Quesada, supra*, 230 Cal.App.3d at

11

pp. 535-536; *People v. Gutierrez* (2003) 106 Cal.App.4th 169, 175.) A ritual oral recitation by a trial court of the possible immigration consequences of a guilty plea adds little to a defendant's actual knowledge of those consequences if the defendant has previously read and understood the written form describing those possible consequences and discussed the form's advisements with his or her counsel. (Cf. *Ibarra*, at p. 286.)

Defendant argues that by "simply relying upon the plea form, the court cannot correct any errors in advisement made by defense counsel." However, defendant fails to ignore that he signed a plea form containing a section 1016.5 advisement that mirrored the statutory language and warned him of the three possible immigration consequences enumerated in section 1016.5. Defendant initialed the plea form indicating that if he was not a citizen of the United States, "deportation, exclusion from admission to the United States, or denial of naturalization *will* result from a conviction of the offense(s) to which" he pled guilty. Before taking defendant's plea, the trial court confirmed that defendant had read and understood the provisions of the plea form before signing and initialing it. As previously explained, the trial court was not required to provide a further verbal advisement; "a validly executed waiver form is a proper substitute for verbal admonishment by the trial court." (*Ramirez*, *supra*, 71 Cal.App.4th at p. 521.) Thus, the evidence at the hearing established defendant was properly advised in compliance with section 1016.5, and the trial court's ruling was not an abuse of discretion.

Even if we assume, for the sake of argument, that the court erred in failing to orally advise defendant of the immigration consequences pursuant to section 1016.5, defendant cannot establish prejudice.

"On the question of prejudice, defendant must show that it is reasonably probable he would not have pleaded guilty or nolo contendere if properly advised." (*People v. Totari*, *supra*, 28 Cal.4th at p. 884.) This question is a factual one. (*Zamudio*, *supra*, 23 Cal.4th at p. 210.) Accordingly, on review we apply the substantial evidence rule. (*Quesada*, *supra*, 230 Cal.App.3d at p. 533.) Under this rule, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*Jackson v. Virginia* (1979) 443 U.S. 307, 318-319; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) Rather, "we 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. . . . If the circumstances reasonably justify the trial court's findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding.' " (*Quesada*, at p. 533.)

"Whether defendant knew of the potential immigration consequences, despite inadequate advisements at the time of the plea, may be a significant factor in determining prejudice . . . ." (*People v. Totari*, *supra*, 28 Cal.4th at p. 884.)

Defendant contends he was prejudiced by the court's failure to comply with section 1016.5 because he entered his plea "without fully understanding the collateral consequences, foregoing any further plea negotiations or even trial, and unknowingly

13

subjecting himself to deportation proceedings." In his declaration in support of his motion to vacate, defendant asserts that had he known of the immigration consequences, he would not have agreed to the conviction and would have waited to hear the result of his suppression motion. He also would have sought advice from an immigration attorney, would not have waived his trial rights, and would have requested an alternative plea that would not have affected his permanent residency in the United States.

There is no merit to this contention. As indicated above, defendant executed the plea waiver form in which he acknowledged the immigration consequences of his plea. He also verbally indicated to the court at the plea hearing that he understood his rights; that he had sufficient time to review his rights, the evidence, and any possible defenses with his attorney; that he did not need any more time; and that he had no questions. From these facts it is reasonably inferable that defendant understood the consequences of his plea. The court reasonably could have concluded that defendant was still aware of these consequences when he entered his plea; therefore it was not reasonably probable that defendant would not have pled guilty to the charges had the court, at the time defendant entered his plea, orally advised defendant of the immigration consequences pursuant to section 1016.5 and inquired further of defendant. Thus, substantial evidence supports the denial of defendant's motion to vacate his conviction and withdraw his guilty plea.

B.    *IAC*

Defendant also argues his motion to vacate his plea should have been granted because he received IAC when his attorney affirmatively misadvised him and

14

misrepresented the immigration consequences of his plea. The People respond that defendant's nonstatutory motion to vacate based on IAC was properly denied because it was untimely. In the alternative, the People argue that there is no evidence, other than his self-serving statements, that he received IAC.[3]

In *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*), the United States Supreme Court held that an attorney's misadvice or failure to advise about the potential immigration consequences of a plea may constitute ineffective assistance. There, the defendant, a Honduran citizen, pleaded guilty to transporting a large quantity of marijuana after his attorney erroneously advised that he need not worry about the immigration consequences of his plea. (*Id*. at p. 359.) When *Padilla* sought postconviction relief, the Kentucky Supreme Court held the Sixth Amendment's guarantee of effective assistance of counsel did not protect a criminal defendant from erroneous advice about the collateral consequences of a conviction. (*Padilla*, at pp. 359-360.) The Unites States Supreme Court disagreed, holding that constitutionally competent counsel must inform his or her client whether a plea carries a risk of deportation. (*Id*. at pp. 360, 374.) *Padilla*'s holding was not limited to affirmative misadvice; instead, the high court reasoned that an attorney has an affirmative duty to

---

[3] The People, in passing, also contend that the motion to vacate the plea based on IAC was properly denied because the trial court did not have jurisdiction to hear the matter. However, after having reviewed the trial court's comments during the hearing on defendant's fourth motion to vacate his conviction, the record, in our view, demonstrates that the court operated from the assumption that it had jurisdiction to rule on the statutory motion and the nonstatutory motion.

15

advise a client when the client faces a risk of deportation. (*Id.* at pp. 370-371, 374.) Because it set forth a new rule of law, *Padilla*'s holding cannot be applied retroactively. (*Chaidez v. United States* (2013) 133 S.Ct. 1103, 1105.)

Prior to *Padilla*, our Supreme Court held in *In re Resendiz* (2001) 25 Cal.4th 230 (*Resendiz*), abrogated on another ground in *Padilla*, *supra*, 559 U.S. at pp. 370-371, that an attorney's affirmative misadvice regarding the immigration consequences of a guilty plea may give rise to a claim for IAC. (*Resendiz*, at pp. 235, 240.) In *Resendiz*, a habeas matter, the court reasoned that a defendant may pursue a claim for relief for IAC based on counsel's misadvice regarding a plea's immigration consequences, notwithstanding the fact that the trial court properly advised the defendant under section 1016.5. (*Resendiz*, at pp. 240-242.) The *Resendiz* court was "not persuaded that the Sixth Amendment imposes a blanket obligation on defense counsel, when advising pleading defendants, to investigate immigration consequences or research immigration law." (*Id.* at pp. 249-250.)

Defendant argues that his 2007 trial counsel's affirmative misadvice and misrepresentation concerning the immigration consequences of his plea constituted IAC and that he is entitled to relief as a result of trial counsel's errors.

At the outset, we note defendant presented alternative forms of relief to the trial court. He presented a motion to vacate the judgment pursuant to section 1016.5. He also purportedly presented a petition for a writ of error *coram nobis*. The trial court denied both (the petition, for failure to show due diligence). As observed in *People v. Carty*

16

(2003) 110 Cal.App.4th 1518 (*Carty*), a motion to vacate the judgment pursuant to section 1016.5 is a statutory motion, while a petition for a writ of error *coram nobis*, which seeks a common law remedy, is a nonstatutory motion to vacate the judgment. (*Carty*, *supra*, at pp. 1523, 1526; see *People v. Kim* (2009) 45 Cal.4th 1078, 1096 (*Kim*).)

To prevail on a *coram nobis* petition, the petitioner must establish that:  (1) some fact existed which, without his fault or negligence, was not presented to the trial court, and which would have prevented the rendition of the judgment; (2) the newly discovered evidence does not go to the merits of the issues of fact determined at trial; and (3) petitioner did not know nor could he have, with due diligence, discovered the facts upon which he relies any sooner than the point at which he petitions for the writ.  (*Kim*, *supra*, 45 Cal.4th at p. 1093; *People v. Mbaabu* (2013) 213 Cal.App.4th 1139, 1146-1147 [Fourth Dist., Div. Two]; *People v. McElwee* (2005) 128 Cal.App.4th 1348, 1352.)  The writ is " ' "not intended to authorize any court to review and revise its opinions; but only to enable it to recall some adjudication made while some fact existed which, if before the court, would have prevented the rendition of the judgment," ' " (italics omitted) such as a party's death, infancy, or insanity, or that his plea was procured by means of fraud or threat of violence.  (*Kim*, *supra*, at pp. 1092, 1094.)  The grounds on which relief may be granted via a petition for writ of error *coram nobis* are narrower than on a petition for writ of habeas corpus; the purpose of a writ of error *coram nobis* " 'is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which,

17

through no negligence or fault of the defendant, was not then known to the court'
[citation]." (*Kim*, *supra*, 45 Cal.4th at p. 1091.)

Here, the trial court properly denied defendant's nonstatutory motion to vacate (or petition for writ of error *coram nobis*) for the procedural reason that he did not show due diligence. We see no evidence in the record of any conduct by defendant challenging his 2007 drug conviction by plea until he initiated the current matter by his first nonstatutory motion to vacate his plea based on IAC in June 2013. Defendant was apparently satisfied with the outcome of his 2007 case until immigration problems arose in January 2013. In April 2010, defendant was aware of potential immigration consequences when he filed his motion for early termination of probation and expungement of the conviction. In that motion, defendant stated that he was a legal resident alien, originally from the Czech Republic, and married to a United States citizen with five minor children and that granting the motion for early termination from probation "would look good to the U.S. Immigration Department when they again review his status here." Even then, defendant waited until June 2013 to file his first motion to vacate and until July 2014 to file his fourth motion to vacate his 2007 conviction based on statutory and nonstatutory grounds. This is not a record establishing due diligence.

Defendant argues that the delay was the result of error by his 2007 trial counsel because at the time he filed his 2010 motion for early termination from probation and expungement of his conviction he was "still operating under the assumption that the conviction would have, at most, some effect upon the renewal of his green card, which

18

prior counsel had mistakenly told him." Defendant maintains that his trial counsel "utterly failed in her capacity to properly advise" him, "as she believed that an expungement would assist" him "in remedying the immigration consequences of his criminal conviction."

Assuming the delay is ignored, we would find the trial court properly denied defendant's motion because it failed on the merits in that a claim of IAC may not be raised by such a vehicle. It is settled that a "writ of error *coram nobis*, based on a claim of IAC for failure to advise the defendant of the immigration consequences of his or her plea, cannot be used to challenge a conviction or withdraw the plea." (*People v. Aguilar* (2014) 227 Cal.App.4th 60, 68 (*Aguilar*); see *Kim*, *supra*, 45 Cal.4th at p. 1104 ["That a claim of IAC, which relates more to a mistake of law than of fact, is an inappropriate ground for relief on *coram nobis* has long been the rule"]; *People v. Mbaabu*, *supra*, 213 Cal.App.4th at pp. 1144-1145; *People v. Shokur* (2012) 205 Cal.App.4th 1398, 1403-1404 (*Shokur*); *People v. Chien* (2008) 159 Cal.App.4th 1283, 1290.) As our Supreme Court explained in *Kim*, *supra*, 45 Cal.4th 1078, a presentation of facts which show that a defendant's willingness to enter a plea would have been affected by better legal advice does not constitute a showing of facts that would have prevented rendition of the judgment. (*Id*. at p. 1103.)

In *Kim*, for example, the defendant, Kim, alleged two purported mistakes of fact: first, that he was unaware his plea to petty theft with a prior would subject him to deportation; and second, he was unaware that, if deported, he would face religious

19

persecution. (*Kim*, *supra*, 45 Cal.4th at p. 1096.) Our Supreme Court held Kim had "not demonstrated that facts existed at the time of his plea that satisfy the strict requirements for this extraordinary type of collateral relief from a final judgment. Specifically, he has not shown ' "that some fact existed which, without any fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment." ' " (*Id*. at pp. 1101-1102.) Counsel's failure to fully advise Kim of the consequences of his plea or seek an immigration-neutral disposition involved only "the *legal effect* of his guilty plea and thus [were] not grounds for relief on *coram nobis*." (*Id*. at p. 1102; see *Aguilar*, *supra*, 227 Cal.App.4th at p. 69.) "New facts that would merely have affected the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment." (*Kim*, *supra*, at p. 1103.) Here, as in *Kim*, defendant's allegations that his 2007 trial counsel misadvised him regarding the immigration consequences of his plea, and that he was unaware of such consequences, are not the sort of new facts that give rise to a *coram nobis* remedy. (*Id*. at p. 1103; *Aguilar*, *supra*, at pp. 69-70.)

Defendant attempts to avoid this result by arguing that "there have been no cases that address the problem of when a defense attorney provides affirmative misrepresentations to a non-citizen defendant, who then relies on such mis-advice [*sic*] to his own detriment." We reject this contention. Initially, we note that there is no evidence in the record to show that defendant's 2007 trial counsel affirmatively misadvised

20

defendant. There is no declaration in the record from his 2007 trial counsel to attest to his self-serving statements. In addition, neither defendant nor his 2007 trial counsel testified at the motion to vacate hearing in October 2014. His self-serving assertions that counsel did not properly advise him and that he otherwise would not have pled as he did are plainly insufficient to establish ineffective assistance. (*In re Alvernaz* (1992) 2 Cal.4th 924, 938 [defendant's self-serving statement that he would have acted differently but for counsel's ineffective assistance "must be corroborated independently by objective evidence"].)

Moreover, similar arguments have been considered and rejected by *Shokur*, *supra*, 205 Cal.App.4th 1398 and *Aguilar*, *supra*, 227 Cal.App.4th 60. "*Padilla* does not require states to provide an avenue for noncitizens to challenge their convictions based on an erroneous immigration advisement when no other remedy is presently available." (*Shokur*, *supra*, at p. 1405; see *Aguilar*, *supra*, at p. 74 [same].) Neither *Padilla* nor California authorities "require a nonstatutory motion safety net to provide a remedy when other remedies through which relief might have been obtained are no longer available." (*Shokur*, *supra*, at p. 1401; *Aguilar*, *supra*, at p. 73 [*Padilla* does not support an argument "that an unlabelled nonstatutory motion affords [a defendant] a remedy when, as here, relief by way of *coram nobis* is foreclosed as a matter of law"].) "[T]he fact that [the defendant] may be entitled to use any available remedy to seek relief from what he claims was ineffective assistance of counsel does not mean that any particular remedy is available to him for that purpose." (*Aguilar*, *supra*, at p. 72.) *Padilla* "held that a claim

of ineffective assistance of counsel may be based upon misadvising or failing to advise the defendant regarding possible immigration consequences of a plea. [Citation.] But it did not hold that such a claim may be brought long after [the defendant's] right to pursue available remedies [has] lapsed." (*Aguilar*, *supra*, at p. 73.)

Defendant's claim of IAC does not arise in a context in which the trial court observed counsel's performance during the course of a jury trial. (Compare *People v. Fosselman* (1983) 33 Cal.3d 572, 582-583.) His claim is that, in receiving advice from his counsel, he did not get adequate advice or that he was misadvised concerning the immigration consequences of his plea. In sum, his contention is based on a factual showing akin to a petition for habeas corpus.[4]

As did the Supreme Court in *Kim*, *supra*, 45 Cal.4th 1078, we acknowledge that defendant faces the "harsh consequence" of possible deportation flowing from his 2007 drug conviction (*id.* at pp. 1108-1109). We nevertheless conclude, as in *Kim*, that he is barred from obtaining relief from his conviction at this late date. (*Ibid*.) The United States Congress has plenary power over matters of immigration and naturalization,

---

[4] Defendant could not bring a petition for habeas corpus because his probation was terminated and he is not in custody of any state official. (*Kim*, *supra*, 45 Cal.4th at p. 1108.) Because defendant is neither in actual nor constructive state custody, he is ineligible as a matter of law for habeas corpus relief. (*People v. Villa* (2009) 45 Cal.4th 1063, 1066, 1068-1069.) " '[O]nce the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it' [citation]." (*People v. Villa*, *supra*, at p. 1071.)

including deportation (*ibid.*), and appears to have determined that a person such as defendant, with a conviction for cultivating marijuana, is subject to possible deportation.

In sum, "[h]aving failed to pursue any of the remedies provided by law, defendant may not now, years later, obtain relief via a nonstatutory motion to vacate the judgment." (*Shokur*, *supra*, 205 Cal.App.4th at p. 1406.)  The trial court properly denied the motion to vacate the judgment and withdraw the plea.[5]

III

DISPOSITION

The trial court's order dated October 23, 2014, denying the statutory and nonstatutory motions to vacate the judgment and to withdraw his plea, is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                                                    P. J.

We concur:


HOLLENHORST
                        J.


McKINSTER
                        J.

---

[5]  Given our conclusion, we do not reach the parties' arguments regarding whether defendant has shown his counsel's purportedly ineffective performance was prejudicial.