Filed 7/21/15  P. v. Padilla CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Appellant, | E062140 |
| v. | (Super.Ct.No. RIF124552) |
| JOSE OCTAVIO PADILLA, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Paul E. Zellerbach and Michael A. Hestrin, District Attorneys, and Matt Reilly, Deputy District Attorney, for Plaintiff and Appellant.

Jacobs & Vega, and Robert F. Jacobs, for Defendant and Respondent.

# I

## INTRODUCTION

On June 29, 2005, a complaint charged defendant and appellant Jose Octavio

Padilla with various felony theft offenses under Penal Code[1] sections 530.5, subdivision

(a) and 114.  On August 3, 2005, defendant pled guilty to count 1, violation of section

530.5, and was sentenced accordingly.

On September 12, 2014, defendant filed a motion to vacate his conviction under

section 1016.5.  At the hearing on the motion to vacate on September 30, 2014, the trial

court granted defendant's motion and vacated his guilty plea.  The People appeal.  For the

reasons set forth below, we affirm the trial court's ruling.

# II

## STATEMENT OF FACTS

In January 2004, defendant broke his hand and went to the emergency room.  The

receptionist asked if defendant had ever been treated there before.  Defendant was unsure

whether he was treated there as a child.  The receptionist entered defendant's name into

the patient records database; she stated she found his information.  Defendant was then

admitted and received medical treatment.

Defendant made billing payments on a regular basis.  However, in 2005, he fell

behind.  On or about June 8, 2005, law enforcement contacted defendant and asked him

to come into the sheriff's station with identification.  Defendant complied.

---

[1]  All statutory references are to the Penal Code unless otherwise specified.

Defendant was asked many questions regarding his identity and citizenship status.[2] Thereafter, he was arrested. Defendant paid bond and was released from jail.

On June 29, 2005, the People filed a felony complaint alleging identity theft and falsification of citizenship status. Defendant had never been in court before and did not understand the charges. He hired an attorney. On July 7, 2005, defendant pled not guilty.

On August 3, 2005, defendant appeared for a felony settlement conference. Defense counsel advised defendant to take a plea deal to avoid a longer sentence. Counsel, however, failed to advise defendant of the general or specific immigration consequences of his plea. Based on his counsel's advice, defendant entered a guilty plea to count 1, felony violation of section 530.5, subdivision (a), using personal identification information of another to obtain credit.

After agreeing to enter into the plea agreement, defendant was presented with a plea form. On the form, he placed his initials all along the left side of the plea form, under the headings of "Advisement of Rights," "Consequences of Plea," and "Defendant's Statement." One of the paragraphs under "Consequences of Plea" was paragraph number six, which stated as follows:

---

[2] In April 1994, defendant lawfully entered the United States with a visa issued by the Immigration and Naturalization Services.

"If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

At the bottom of the plea form, defendant signed and dated below the statement: "I declare under penalty of perjury that the initials that appear above are my own, and that I have read and understand each statement that I have initialed."

On the next page of the plea agreement, defense counsel signed his name under the following statement:

"I am the attorney for the above named defendant. I am satisfied that (1) the defendant understands his/her constitutional rights and understands that a guilty plea would be a waiver of these rights; (2) that the defendant has had an adequate opportunity to discuss his/her case with me, including any defenses he/she may have to the charges; (3) that the defendant understands the consequences of his/her guilty plea. Furthermore, I join in the decision of the defendant to enter a guilty plea at this time."

In open court, the trial court asked defendant, "Are these your initials and signatures on the waiver form?" Defendant responded in the affirmative. The court then asked if defendant had any questions about the rights he was waiving or the consequences. Defendant responded, "No." These were the court's sole inquiries regarding the plea form. The court did not provide oral advisements regarding the immigration consequences of defendant's plea. Immigration consequences were not discussed at all during the hearing.

4

Pursuant to the terms of the plea agreement, defendant was sentenced to 30 days in jail and three years formal probation. Defendant has successfully completed the terms of his sentence.

On September 12, 2014, current defense counsel filed a motion to vacate the judgment under section 1016.5. In the motion, defendant claimed that he was not aware of the adverse immigration consequences of his guilty plea, which the People opposed.

On September 30, 2014, the trial court granted the motion finding that the court failed to comply with the requirements of section 1016.5 and that the plea was not "knowing." The People appeal.

III

ANALYSIS

The People contend that the trial court erred in granting defendant's motion to vacate his guilty plea and reinstating the criminal proceedings.

Under section 1016.5, a defendant can obtain relief if he or she "demonstrate[s] that (1) the court taking the plea failed to advise the defendant of the immigration consequences as provided by section 1016.5, (2) as a consequence of conviction, the defendant actually faces one or more of the statutorily specified immigration consequences, and (3) the defendant was prejudiced by the court's failure to provide complete advisements." (*People v. Chien* (2008) 159 Cal.App.4th 1283, 1287, citing *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 199-200; *People v. Totari* (2002) 28 Cal.4th 876, 884.)

5

Section 1016.5, subdivision (a), requires the following admonishment be given to any defendant entering a guilty plea: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

The court is not necessarily required to provide the above warning orally. However, it must appear on the record, and it must be given by the court. (*People v. Gutierrez* (2003) 106 Cal.App.4th 169, 175; *People v. Ramirez* (1999) 71 Cal.App.4th 519, 521.) Nothing in the language of section 1016.5, or in case law, explicitly requires that the record of an admonishment of immigration consequences be expressly noted in the court's minutes. However, even if no express record on the minutes is necessarily *required*, the absence of any mention in the minutes does provide some evidentiary support for a conclusion that no such admonition was in fact given. Although a court "*may* rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment," (*People v. Panizzon* (1996) 13 Cal.4th 68, 83), and probably will in most cases, it is not necessarily required to do so.

In this case, the advisement was clearly printed on the plea form defendant initialed and signed. In the plea form, under "Consequences of Plea[,]" it stated: "If I am not a citizen of the United States, I understand that this conviction may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Defendant initialed on the line

6

immediately next to this statement.  At the bottom of the page, defendant also signed and dated below the statement:  "I declare under penalty of perjury that the initials that appear above are my own and that I have read and understand each statement that I have initialed."

Despite the appearance of the written statement on defendant's plea form, the trial court credited defendant's assertion that his attorney did not go over the plea form with him.  Moreover, the trial court, after reviewing the reporter's transcript, noted that defendant was never orally advised about the immigration consequences of his plea.  A trial court's ruling on a section 1016.5 motion will withstand appellate review unless the record shows a clear abuse of discretion.  (*People v. Superior Court* (*Zamudio*), *supra*, 23 Cal.4th 183, 192.)

The crux of the matter is whether the trial court, under the appropriate standard of review, clearly abused its discretion in making its determination (*People v. Superior Court (Zamudio), supra,* 23 Cal.4th 183, 192), i.e., whether it can be said that the trial court's findings were "arbitrary, capricious, or patently absurd," in such a way that they "result[ed] in a manifest miscarriage of justice" (*People v. Limon* (2009) 179 Cal.App.4th 1514, 1518, citing *People v. Shaw* (1998) 64 Cal.App.4th 492, 496).  No such abuse of discretion has been shown on this record.

In this case, the trial court held a hearing on defendant's motion to vacate. At the hearing, defense counsel reiterated that "the warning required in the statute was not provided orally. That hasn't been tested by the government. It's clear on the record it wasn't given." Defense counsel went on to state that the People's argument "is to rely on the plea form, which [defendant] declared under penalty of perjury that the form was not read to him. He was instructed to initial and sign it. That was it. . . . He was not advised to contact an immigration attorney."

Initially, the trial court indicated that it was going to deny defendant's motion. The court stated, based on the plea form that was initialed and signed by defendant, that it did not "see how I can grant the motion . . . ." Defense counsel, however, reminded the court that "defendant never said he read and understood the form in open court. The judge never asked him if he read and understood the form. The attorney never stated that the client read and understood the form. The judge never asked the attorney, Did you go over the form, and does your client read and - - did your client read, and does he understand the form."

The court then stated that it had to go over the transcript from the hearing wherein defendant pled guilty. After reviewing the transcript, the court noted that the trial court did ask defendant whether the initials and signature on the plea form were his, to which defendant responded, "Yes." The court then noted that "there's that missing question that I'm used to hearing from myself, Did you go over this with your attorney, and did you understand everything?" The court asked counsel what impact the lack of such

8

questioning had on the plea. Defense counsel answered, "Well, the defendant would not have pled guilty had he known - - he would not have pled guilty to this charge had he known of the particular immigration consequences as a result of the plea." In response, the People argued that because defendant's signature was on this plea form and he stated he read and understood what he was signing, that defendant should have been aware of the immigration consequences.

The court acknowledged that it is not required to "read each and every element in the plea form, each and every clause in the plea form to the defendant. It can be done by referring to the writing. But it is up to the judge to determine that [the plea] was free, voluntary, and knowing. And it seems like we're missing one step. [¶] . . . [The plea] seems to be free. It seems to be voluntary, because it was a plea agreement. But whether it was knowledgeable, I'm a little apprehensive about that."

After engaging in further discussion with defense counsel and the prosecutor, the court stated: "The collateral consequences, which this one falls under, according to case law, do not have to read individually, although they can, but it's not required nor necessarily suggested. But in all cases, the judge has to be satisfied that there's a free, voluntary, and knowing waiver of the rights, and I see that step is missing. I'm okay with free and voluntary, but I don't know about knowing because the judge didn't ask him. The D.A. wants me to presume it because he signed the form, but if we do that then we would never have a plea in open court." Taking into account all of the evidence, the trial

9

court found that defendant did not knowingly understand the immigration consequences of his guilty plea.  Therefore, it granted defendant's motion to vacate.

In properly applying the standard of review, an appellate court must uphold the trial court's reasonable inferences and resolution of factual conflicts if supported by substantial evidence, viewed in the light most favorable to the ruling, and must also accept the court's credibility determinations.  (*People v. Quesada* (1991) 230 Cal.App.3d 525, 533.)  The trial court's inferences and conclusions here are supported by substantial evidence.

Another trier of fact might have heard the same evidence and reached the opposite conclusion.  However, regardless of how we would have ruled if we were the trier of fact, we are bound to view the evidence in the light most favorable to the trial court's conclusion.

In sum, while this is not the decision we would have made on this cold record, it is not our decision to make, and we cannot substitute our discretion for that of the trial court.  The appellant has failed to demonstrate that the trial court abused its discretion in making its ruling.

IV

## DISPOSITION

For the reasons stated, the trial court's ruling is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

KING
J.

11