Filed 2/28/25  P. v. Garcia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RAUL GOMEZ GARCIA,<br><br>    Defendant and Appellant. | G063920<br><br>(Super. Ct. No. RCR17577)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of San Bernardino County, Bridgid M. McCann, Judge. Affirmed.

The Matian Firm and Edgar J. Cervantes for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Raul Gomez Garcia[1] filed a motion under Penal Code section 1473.7, subdivision (a)(1)[2] to vacate his 1990 plea to two counts of felony drug sales (Health & Saf. Code, § 11352, subd. (a)). He attached as an exhibit his sworn declaration laying out the factual basis for his eligibility for vacatur. He also testified at the motion hearing. The trial court denied Gomez Garcia's motion because the court found he was not credible as a witness and—absent corroborating evidence—found his claims unsupported. He appeals from the trial court's order denying his motion. We affirm the court's order.

FACTS

I.

1990 DRUG SALES CONVICTIONS

Gomez Garcia's declaration stated that he was visiting friends from work at a hotel when one of the friends got a call from a buyer. A friend told Gomez Garcia to take two balloons to the buyer who was by a nearby pay phone. The buyer gave Gomez Garcia $20 in exchange for the balloons. Police officers later came to the hotel room and arrested everyone, including Gomez Garcia. Gomez Garcia said he did not know his friends were drug dealers at the time.

At the section 1473.7 motion hearing, however, Gomez Garcia testified that he was at a pay phone when an undercover police officer

---

[1] Gomez Garcia testified that his true name is Samuel Cruz Gonzalez. We will use his legal name, Raul Gomez Garcia, for clarity and consistency with relevant case documents and history.

[2] All undesignated statutory references are to the Penal Code. All references to section 1473.7 are to 1473.7, subdivision (a)(1), unless otherwise specified.

approached him asking for drugs. He told the officer that he knew someone to get drugs from. The officer gave Gomez Garcia either $20 or $30 and waited by the phone while Gomez Garcia went to the nearby hotel room to get the drugs. Multiple police officers then arrested Gomez Garcia. He testified that the person he was buying the drugs from was his drug dealer, not his friend.

In 1990, Gomez Garcia was charged and pleaded guilty to two felony counts of drug sales (Health & Saf. Code, § 11352, subd. (a)).[3] The trial court initially sentenced Gomez Garcia to 180 days of jail and three years of formal probation.[4] In 1991, he was convicted of a misdemeanor charge for providing false identification to law enforcement. The court then sentenced him to three years in state prison on the drug sales case for violating probation.[5]

---

[3] The court records and Gomez Garcia's rap sheet indicate he sustained both convictions, though the plea transcript is unclear. We rely on the court records and rap sheet.

[4] In his declaration in support of his section 1473.7 motion, Gomez Garcia asserts his pre-plea counsel for the drug sales case told him that he "was given an offer of [three] years if [he] plead guilty and that if [he] didn't plead guilty, [he] would be going for 10 years in prison." We note that in 1990, the maximum penalty Gomez Garcia could have faced for two counts of felony drug sales under Health and Safety Code section 11352, subdivision (a) was six years four months. (*Ibid.*; Pen. Code, § 1170.1, subd. (a).)

[5] When testifying at the motion hearing, Gomez Garcia recalled that he believed he was initially sentenced to three years in prison for his drug conviction, rather than subsequent to a probation violation.

## II.

### IMMIGRATION HISTORY

According to Gomez Garcia, he fled Mexico because he was physically and verbally abused by his parents. He sought refuge in the United States around age 12, entering without legal status. In his declaration, Gomez Garcia said that after serving his prison sentence, he was deported because his 1990 drug convictions were deemed particularly serious offenses, which made him ineligible for immigration relief. At the motion hearing, however, he testified that he was not deported, but voluntarily returned to Mexico after prison. He later testified that he did not know why he was deported. It remains unclear whether he was ordered deported or whether he agreed to voluntary departure, but on appeal Gomez Garcia argues he was subject to voluntary departure, which may impact his eligibility for admission to the United States.

Gomez Garcia said he returned to the United States again without lawful status, and he did not learn that his drug convictions incurred immigration consequences until 2016, when his application for adjustment of status was denied because of his drug convictions.[6] Gomez Garcia's declaration stated that in 2022, the Ninth Circuit Court of Appeals affirmed an order for his deportation because his drug conviction was considered a particularly serious crime rendering him ineligible for asylum.

---

[6] We note that in addition to the two drug sales convictions (Health & Saf. Code, § 11352, subd. (a)), Gomez Garcia also sustained a 1991 conviction for providing false identification to a peace officer (§ 148.9), a 2013 conviction for driving without a license (Veh. Code, § 12500, subd. (a)), and a 2016 conviction for driving with a blood alcohol content of 0.08 percent or greater (Veh. Code, § 23152, subd. (b)).

On appeal, Gomez Garcia cites to sections of the Immigration and Nationality Act (8 U.S.C. § 1101 et seq.), stating that his drug convictions render him inadmissible to the United States, subject to deportation, permanent exclusion, and denial of naturalization.

### III.

### THE SECTION 1473.7 MOTION

Gomez Garcia filed a motion to vacate his drug sales convictions, alleging his defense counsel failed to research and advise about the specific immigration consequences and failed to negotiate with the prosecution for an immigration-neutral disposition. Gomez Garcia's declaration, signed February 23, 2023, is the sole exhibit attached to his motion to establish the factual basis for his claim. He was also the sole witness who testified at the motion hearing on May 12, 2023.

The motion itself is riddled with errors and appears to be a stock motion in which counsel plugged in details relevant to Gomez Garcia. For example, one heading reads, "MS. XXXXX'S HEALTH AND SAFETY CODE SECTION 11378 CONVICTION IS LEGALLY INVALID AND SHOULD BE VACATED." The heading lists the wrong gender pronoun, the wrong criminal charge, and omits Gomez Garcia's name. This is not the only instance where the motion uses female pronouns when referring to Gomez Garcia. There is also a lengthy portion of the motion discussing counsel's error in failing to research and understand that a nunc pro tunc dismissal is not recognized by immigration courts. This discussion is irrelevant and inapplicable to Gomez Garcia's case.

Significantly, all of Gomez Garcia's claims alleging counsel error in the pre-plea advisement are erroneously attributed to his postconviction

5

probation violation counsel by name, instead of his trial counsel. Gomez Garcia's entire argument is rooted in his trial counsel's errors and failures which impacted his understanding of the immigration consequences to his plea, consistently referring to his probation violation counsel's name instead.[7] For example, Gomez Garcia claimed that counsel "did not try to negotiate with the district attorney's office for an offense that carried less serious immigration consequences than a section 11352(a) violation" and counsel "was aware that the violation of Penal Code section 32, as conspiracy, would have avoided [the immigration consequences]." It remains unclear which counsel he is speaking about, or how he knows whether they knew of or negotiated for an immigration-neutral disposition.

During the motion hearing, the trial court asked Gomez Garcia about the discrepancy between his declaration and testimony in relaying the underlying facts of his arrest. The court asked whether he remembered if the people in the hotel room got a call from a buyer, to which Gomez Garcia replied, "No, I don't know." The court followed up, asking whether he remembered writing in his declaration that they did, to which he replied, "I don't recall writing that." He reviewed his declaration and testified that he recognized it as information he told his motion attorney, but that he did not recall signing it.

---

[7] At the motion hearing, the trial court commented that the motion "spent a great deal of time on ineffective assistance [of c]ounsel." The prosecution objected to the ineffective assistance of counsel (IAC) arguments because Gomez Garcia did not properly serve the correct counsel. As a result, Gomez Garcia withdrew any IAC argument. We note, however, that the motion asserted counsel error, not IAC. A moving party is not required to assert IAC under section 1473.7. We do not consider his argument asserting counsel error withdrawn.

## IV.

GOMEZ GARCIA'S UNDERSTANDING OF THE IMMIGRATION CONSEQUENCES

At the motion hearing, Gomez Garcia testified that at the time of his 1990 plea, he did not know his drug convictions would make him ineligible to adjust his immigration status. Had he known, he would not have pled guilty; he "would have fought the case." He said he feared returning to Mexico. In his declaration, he asserted he would never want to return to his abusive parents, and he wanted to build a future in the United States in pursuit of the American dream. At the time of his plea, he was working as a gardener and learning how to become a business owner.

The plea transcript from Gomez Garcia's 1990 drug sales plea indicated that the trial court taking his plea discussed his potential deportation during the plea.[8] The court noted that Gomez Garcia had an "alien hold" and that, "should he be deported, one of the terms of probation shall be that he not return to the United States unless he has proper documentation." Gomez Garcia's trial counsel replied, "Implicit with that, if he's not deported, he can be on ordinary terms and conditions here. Usual circumstances however are that with the hold[,] he'll be deported." The court asked Gomez Garcia, "[I]s that your understanding?" to which he replied, "Yes." The court asked Gomez Garcia, "You understand what's going on?" to which he replied, "Yes." The court further inquired, "You've discussed all this with your attorney in this matter, Mr. Mangan?" to which Gomez Garcia

---

[8] At the section 1473.7 motion hearing, the trial court took judicial notice of the 1990 plea transcript submitted by the prosecution and considered it when determining the motion's merits.

again replied, "Yes." Finally, the court asked, "Do you have any questions?" and Gomez Garcia said, "No."

V.

THE TRIAL COURT'S FINDINGS

The trial court denied Gomez Garcia's section 1473.7 motion to vacate his drug sales convictions. It concluded he was not a credible witness because the court "did not see any consistencies in his declaration and testimony." The court found his "declaration and testimony [were] self-serving and not reliable. It also [found] several situations where [his] testimony conflict[ed] with the court record."

The trial court noted that Gomez Garcia provided no corroborating evidence to prove his drug convictions were the cause of his deportation. The court stated that at the time of Gomez Garcia's plea in 1990, the law only required that either the court or counsel must advise the defendant of the potential immigration consequences, citing *People v. Quesada* (1991) 230 Cal.App.3d 525, 535–536. The court concluded that because Gomez Garcia was made aware that he could be deported when the 1990 court advised him as much during the plea, he was sufficiently advised under section 1473.7.

DISCUSSION

Gomez Garcia appeals the trial court's denial order. He argues we should reverse the order because he was not advised of the specific immigration consequence that he would be denied adjustment of status because of his drug sales convictions. He omitted argument about whether any error was prejudicial. Although we disagree with the trial court that the 1990 court's advice that Gomez Garcia *may* be deported is not, alone, legally

8

sufficient under section 1473.7, we ultimately adopt the court's finding that Gomez Garcia is not credible and did not provide objective evidence to corroborate his claim. We affirm.

## I.

### STANDARD OF REVIEW

We apply an independent standard of review to a trial court's denial of a section 1473.7 motion. (*People v. Vivar* (2021) 11 Cal.5th 510, 524–525 (*Vivar*).) Because the trial court here conducted an evidentiary hearing rather than ruling based on documentary evidence alone, we give deference to the court's factual findings based on the court's "personal observations of witnesses" and its witness credibility determinations. (*Id.* at pp. 527–528.)

## II.

### SECTION 1473.7

Section 1473.7 allows noncitizen defendants who have completed their sentences to move the trial court to vacate their conviction or sentence if they establish by a preponderance of the evidence that it is "legally invalid due to prejudicial error damaging [their] ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" caused by the criminal disposition. (§ 1473.7, subd. (a)(1); *id.*, subd. (e)(1).)

To warrant vacatur, "[t]he [moving party] must first show that he did not meaningfully understand the immigration consequences of his plea." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).) The moving party may argue that he failed to meaningfully understand the immigration consequences because of his defense counsel's error (*People v. Mejia* (2019) 36

9

Cal.App.5th 859, 871) or even because of the moving party's own subjective misunderstanding (*id.* at p. 870).

"Next, the [moving party] must show that his misunderstanding constituted prejudicial error" (*Espinoza, supra*, 14 Cal.5th at p. 319) by "demonstrating a reasonable probability that [he or she] would have rejected the plea if [he or she] had correctly understood its actual or potential immigration consequences" (*Vivar, supra*, 11 Cal.5th at p. 529). This can be evidenced by demonstrating strong community ties at the time of the plea (*Espinoza*, at p. 321) and "whether alternative, immigration-safe dispositions were available at the time" of the plea (*id.* at p. 323).

A moving party seeking vacatur "must do more than simply claim he did not understand the immigration consequences of the plea. The claim must be corroborated by evidence beyond the [moving party]'s self-serving statements." (*People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 664.) Case law makes clear that the moving party must provide "'"objective evidence"'" to corroborate factual assertions. [Citation.] Objective evidence includes facts provided by declarations, contemporaneous documentation of the [moving party]'s immigration concerns or interactions with counsel, and evidence of the charges the [moving party] faced." (*Espinoza, supra*, 14 Cal.5th at p. 321.)

"Objective evidence of a [moving party]'s community ties includes facts provided by a [moving party]'s declaration or declarations from family members, friends, colleagues, community members, or other acquaintances." (*Espinoza, supra*, 14 Cal.5th at p. 321.) These examples of relevant corroborating evidence are not necessarily required. Indeed, "no specific kind of evidence is a prerequisite to relief." (*Id.* at p. 325.) Rather, the trial court

considers "the 'totality of the circumstances,' which necessarily involves case-by-case examination of the record." (*Ibid.*)

For example, in *Espinoza*, the moving party supported his assertion of prejudice "with evidence regarding his biographical history and ties to the United States; his lack of a criminal record; his community involvement following his conviction; and a declaration from an immigration law expert explaining that he could have pleaded to alternative, immigration-safe dispositions." (*Espinoza, supra*, 14 Cal. 5th at p. 321.) The Attorney General and our Supreme Court agreed that despite the trial court's general advisement that Espinoza's plea *may* have immigration consequences, "Espinoza's evidentiary showing establishe[d] prejudicial error." (*Id.* at pp. 320–321.) Our Supreme Court noted that the objective evidence of "Espinoza's deep and long-standing ties [were] undisputed" and were one factor that "weigh[ed] in favor of finding that he would have considered immigration consequences to be of paramount concern in deciding whether to accept a plea agreement." (*Id.* at p. 322.)

In *Vivar*, our Supreme Court concluded that the moving party, Vivar, established prejudicial error. Vivar's declaration asserted he would never have accepted a plea agreement had his defense counsel advised him of the adverse immigration consequences. (*Vivar, supra*, 11 Cal.5th at p. 531.) The court stated that Vivar provided objective evidence to support his claim, including his defense counsel's contemporaneous notes that reflected Vivar's concern about immigration consequences. (*Id.* at p. 530.) He also attached numerous letters that he wrote the sentencing court shortly after his guilty plea, once he learned of the adverse immigration consequences, similarly stating that his defense counsel never told him about the immigration

11

consequences and—had he known—he would not have pleaded guilty. (*Id.* at pp. 530–531.) Finally, Vivar included a declaration from an immigration expert explaining that had he accepted the alternative plea agreement the prosecution offered, he would not have had to face deportation. (*Id.* at p. 531.)

We agree with and defer to the trial court's finding that Gomez Garcia is not a reliable witness. He testified that he did not remember signing his declaration or writing that his friends at the hotel received a call from a buyer. His testimony relaying the facts underlying his arrest were contrary to his recounting in his declaration, despite the statements occurring only a few months apart. He was also equivocal about his immigration history, specifically about whether he was deported or engaged in voluntary departure and why he was deported.

It would be understandable if in 2023, Gomez Garcia did not remember details about events occurring in 1990, like his confusion about whether he was sentenced to three years in prison initially or after his probation violation. But to have varied statements between February 23, 2023, and May 12, 2023, indicates to us that Gomez Garcia is indeed an unreliable witness. This, coupled with our deference to the trial court's witness credibility determination, leaves us to rely on the remaining record: the 1990 court record and 1990 plea transcript.

We are mindful that "no specific kind of evidence is a prerequisite to relief," and that the trial court must consider all relevant factors, in the "'totality of the circumstances'" in a "case-by-case examination of the record." (*Espinoza, supra*, 14 Cal.5th at p. 325.) Indeed, the significant amount of corroborating objective evidence presented in *Vivar* is not a prerequisite for every case. But where, as here, the moving party has provided *only* his

12

declaration and testimony, we do not have sufficient corroborating evidence to overcome a finding that the statements were self-serving. And because we found Gomez Garcia was not a credible witness, we cannot meaningfully rely on his self-serving statements. (*Vivar, supra*, 11 Cal.5th at pp. 527–528.)

Without relying on Gomez Garcia's testimony and declaration, we are left with the 1990 plea transcript the prosecution provided at the motion hearing and the 1990 court record. The plea transcript includes the sentencing court's generic admonition that the plea *may* result in his deportation. The conversation during the plea between the sentencing court, Gomez Garcia, and Gomez Garcia's counsel indicates that there was an immigration hold, but no one knew whether he would certainly be subject to deportation. The conversation did not prove that he was advised he would be denied future immigration benefits. It is possible he did not receive specific and accurate immigration advice. But we conclude Gomez Garcia did not meet his burden in establishing by a preponderance of the evidence that he sustained prejudicial error rendering his guilty plea legally invalid under section 1473.7.

## DISPOSITION

We affirm the trial court's order denying Gomez Garcia's motion.


SANCHEZ, J.

WE CONCUR:


MOORE, ACTING P. J.


DELANEY, J.