Filed 4/28/25  P. v. Sernas CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B335505 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA070478) |
| v. | |
| HERIBERTO JUAREZ SERNAS, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge. Affirmed.

Heather J. Manolakas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Facing a potential term of 28 years in prison for sexually abusing his stepdaughter, appellant Heriberto Juarez Sernas negotiated a six-year term in exchange for pleading no contest to one count of committing a lewd act on a child under the age of 14. (Pen. Code, § 288.)[1]  Upon completing his prison term, appellant was deported.  A decade later, he moved to vacate his sentence, claiming ignorance of the immigration consequences of his plea. (§§ 1016.5, 1473.7.)  The trial court denied his motion.

After independent review, we conclude that the motion was properly denied.  Before entering his plea, appellant reviewed the waiver of his rights—including immigration consequences—with his attorney and an interpreter.  He told the court he understood all of his rights and all of the consequences and had no questions. In his motion, appellant claimed he did not understand what he was doing, 13 years earlier, but the court did not believe him. Appellant lacked legal status, knew he could be deported at any time, expressed no concern about future deportation, and made a rational choice to avoid the risk of a lengthy prison term.  No prejudicial error occurred at the time he entered his plea in 2010. We affirm.

## FACTS AND PROCEDURAL HISTORY
### The Charges Against Appellant

In 2009, appellant was charged with three counts of lewd acts upon a child under the age of 14, and one count of continuous sexual abuse.  (§§ 288, subd. (a), 288.5, subd. (a).)  The victim was his young stepdaughter, who told police that appellant began molesting her in 2001, when she was six.  According to the probation report, he began by touching her breasts, thighs, and

---

[1] Undesignated statutory references are to the Penal Code.

vagina.  Later, he made her orally copulate him, sodomized her, and raped her.  The victim's mother learned of the abuse and moved out with the children.  She believed appellant when he apologized and promised not to do it again.  She let him live with her and the children because he was the "breadwinner."  Appellant broke his promise and continued to grope and digitally penetrate the victim's vagina.

Appellant agreed to speak to police.  He initially denied the abuse.  When told that his wife knew of it, he admitted touching the victim but said it was "an accident and they were playing."  He accused the victim of being the aggressor, saying she put his hand repeatedly on her vagina and touched his penis.  Appellant said he touched her vagina for a few seconds then removed his hand.  He admitted getting an erection while holding the victim on his lap, and thought about doing something more sexual but decided against it.  He also said he had erections while playing with his young biological children but pushed them away when he became aroused "because he knew it was not right."

**Appellant Agrees to Plead No Contest**

Appellant negotiated a plea.  As part of the plea, he initialed and signed a waiver stating, "I understand that if I am not a citizen of the United States, *I must expect my plea* of guilty or not contest *will result in my deportation*, exclusion from admission or reentry to the United States, and denial of naturalization and amnesty."  (Italics added.)

At a hearing on May 14, 2010, appellant was advised of his rights against self-incrimination; the nature of the charges; the possible consequences of a guilty or no contest plea; and the legal effect on subsequent convictions.  The court's order states, "If you are not a citizen, you are hereby advised that a conviction of the

offense for which you have been charged will have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

Finding that appellant expressly, knowingly, intelligently, and understandingly waived his rights, the court accepted his no contest plea to count one, a violation of section 288. He was sentenced to six years in prison, per the terms of his plea bargain. The remaining counts were dismissed.

### Appellant Moves to Vacate His Sentence

In 2023, appellant moved to vacate his plea, arguing that he "was not properly advised of the immigration consequences of his guilty plea [and] never understood that his guilty plea to the charged offenses would forevermore prevent him from becoming a legal member of the American community. Defendant was prejudiced by his failure to understand the true immigration consequences of his guilty plea because he believed he was innocent." His lawyer's threat to withdraw without payment of additional funds caused appellant to plead guilty. Had he realized he would be deported to Mexico, he never would have pleaded guilty.

Appellant declared that he entered this country illegally in 1996, when he was 19. His wife and children are United States citizens. He worked in a restaurant and was going to get a green card when he was arrested. He had no prior criminal record. He declared, "I did not ever do anything to this girl," and accused her of making "false charges." "Because I felt I was innocent," appellant wanted to go to trial, but counsel "wanted me to pay him more money for trial, and I had already paid him all the money I had." He pleaded guilty, received a six-year term, and

4

served three years.  He was deported upon his release and rarely sees his wife and teenage children.

Appellant asserted, "I had no idea that I would be deported as a result of my guilty plea.  Nobody said a word to me about deportation at the time."  Because he was stressed and not thinking straight, "I just signed and initialed the papers put in front of me and pled guilty."

Appellant's counsel declared that sex offenses by noncitizens require deportation.  Appellant cannot return to the United States unless his conviction is vacated.  Appellant admittedly signed a waiver stating that a guilty plea "will result in my deportation."  However, the court did not orally advise appellant that he could be deported.

In supplemental papers, appellant declared that he "never made the statements attributed to me by the police at the time of my arrest, or the statements I made were misconstrued."  Though he told officers that the victim was "aggressive," he was referring to her attitude, not sexual aggression toward him.  He often touched her, but not sexually.  He admitted saying he knew it was "not right" to have sexual feelings toward his own children, but he intended to include his stepdaughter in that statement.

Appellant had lived with his wife and two young daughters.  If he had known he would be deported for pleading guilty, "I never would have done it."  He had a good job in the restaurant business.  He would rather go to prison for many years than live in Mexico, separated from his family.

In opposition, the district attorney argued that appellant's motion should be denied as untimely.  He knew the actual consequences of his plea when he was deported 10 years ago.  His claim fails on the merits because he executed a waiver form,

5

which is a proper substitute for a verbal admonishment by the court.  He was warned about the consequences and was facing a possible sentence of 28 years for molesting a child.  He did not show that deportation was a consideration when he entered a plea and was facing a lengthy prison term.

The evidence against appellant was strong:  He admitted touching the victim's vagina, though he blamed the child's "aggression" for it.  He admitted to being sexually aroused by the victim and by his own children.  It is not reasonably probable that he would have elected to go to trial rather than accept the offer of a six-year term.

At the plea hearing, the court asked appellant if he spoke to his lawyer about possible defenses and the consequences of his plea; whether he read the advisement form with the assistance of his lawyer and the interpreter; whether he initialed and signed the advisement to indicate that he "understood all of [his] rights and all of the consequences"; whether he gave up his rights; and whether he had any questions.  Appellant agreed to everything and had no questions. The court warned him that "for no reason may you come back later and change your mind" once it announced his sentence.

### The Initial Ruling on Appellant's Motion

The trial court denied appellant's motion.  His executed waiver acknowledged that his plea "will result in my deportation."  The form was translated and signed by appellant and his attorney, who certified that he explained the consequences of the plea to appellant.  In court, appellant was asked if he understood the form and told the court that he understood all of his rights and the consequences.  It was unnecessary to repeat the admonishment orally.

6

The court rejected appellant's "self-serving declarations" that he was not "thinking straight" when he signed and initialed the waiver. Counsel reviewed the waiver with appellant, whose claim that "nobody said a word" about deportation "is not credible" in light of the executed waiver, which the interpreter certified was fully translated into Spanish. Appellant did not carry his burden of showing prejudice. He received a substantial benefit by agreeing to a deal that reduced his exposure from 28 to six years. The court did not believe his claim that he would have gone to trial to avoid deportation. He attended the preliminary hearing, where the victim testified. He was aware of all the evidence, yet chose to plead no contest.

**Appellant's Motion for Reconsideration**

Appellant moved for reconsideration. He submitted a declaration from trial counsel Leonard Levine, who stated that his custom and practice is to review the waiver form with a client and check off each provision after reviewing it. His check mark "indicates that I did review" the immigration provision with appellant; however, "I do not believe I advised Mr. Sernas beyond the terms of the form." Appellant declared that he never saw a medical report stating that the victim's vagina and anus showed no sign of sexual abuse. Had he seen the report, he would never have pleaded guilty because it proves his innocence.

The court heard testimony from appellant and defense counsel Levine, who testified that he did "not specifically remember" appellant's case. He did not tell appellant that he would *not* be deported. Levine believed that he reviewed the evidence with appellant, including the sexual abuse exam, and explained why a no contest plea "was a reasonable option, and he agreed to do it." He did not recall giving immigration advice

7

beyond what is written in the waiver form.  It was his practice to review the waiver form with the client.

Appellant testified that Levine never said "one word" to him about deportation and did not use a Spanish interpreter when they reviewed the waiver form.  However, he told the court in 2010 that he reviewed with counsel the facts of the case, any possible defenses, and the consequences of entering the plea.  He replied "yes" when the court asked, "Did you understand everything that was said to you?"  He also replied "yes" when the court asked if he was assisted by an interpreter and if he read and understood the form "with the assistance of your lawyer and the interpreter."  He had answered the court's questions "in a truthful manner."

Appellant conceded that he came to the United States illegally.  He knew that he could be deported at any time.  He did not think that committing crimes could result in deportation, only that working in the United States could result in deportation.

Appellant claimed no recollection of the waiver form, or the judge's questions, or entering a plea, or the preliminary hearing when the victim testified, or speaking to detectives after he was arrested.  He did, however, deny making incriminating statements to police.

## The Court's Second Ruling

In a written order, the court rejected appellant's claim that nobody discussed the form with him:  He was "flatly contradicted" by the waiver form itself and the transcript of the plea hearing.  Appellant stated that he crossed the border illegally.  He conceded that "based on [his] illegal status, [he] could be deported or removed from the country at any time."  He was confronted by

8

a threat he made to the victim to have her deported because she lacked legal status in the United States.

The court discredited appellant's statement that he did not know he could be deported:  It contradicts his threat to the victim, and it defies common sense that he would think the criminal case would have no impact because "he knew he was deportable for any reason at all."  No possible plea could avoid deportation for his crime.  Appellant waited 10 years to vacate his plea, long after he was deported.[2]

Appellant claimed innocence, but was confronted with statements he made to police.  He denied saying any of it—that he had an erection when the victim sat on his lap, that he touched the victim's genitals and thigh with his hand, that the victim touched his penis, that he got dressed so his wife would not see his erection, or that the victim was sexually aggressive and said she wanted to be with him.  The court found no part of his testimony credible.  It denied the motion.  He appeals.  (§§ 1237, subd. (b), 1473.7, subd. (f).)

## DISCUSSION
### Analysis Under Section 1016.5

Appellant initialed and signed a waiver form stating, "I must expect my plea of guilty or no contest will result in my deportation."  He maintains that the waiver is not enough, insisting that the court had to *orally* advise him of immigration consequences during the plea hearing under section 1016.5.[3]

---

[2] The court noted that if it vacated the plea, "[t]he case doesn't get dismissed; [it] simply becomes active again."

[3] "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall

9

"To prevail on a motion to vacate under section 1016.5, a defendant must establish that (1) he or she was not properly advised of the immigration consequences as provided by the statute; (2) there exists, at the time of the motion, more than a remote possibility that the conviction will have one or more of the specified adverse immigration consequences; and (3) he or she was prejudiced by the nonadvisement." (*People v. Totari* (2002) 28 Cal.4th 876, 884.)

Appellant is mistaken that a court must recite aloud the contents of a signed waiver. Courts "may rely upon a defendant's validly executed waiver form as a proper substitute for a personal admonishment." (*People v. Panizzon* (1996) 13 Cal.4th 68, 83.) "[A] defendant who has signed a waiver form upon competent advice of his attorney has little need to hear a ritual recitation of his rights by a trial judge. The judge need only determine whether defendant had read and understood the contents of the form, and had discussed them with his attorney." (*In re Ibarra* (1983) 34 Cal.3d 277, 286.)

Courts have held that section 1016.5 does not require an oral admonition. (*People v. Ramirez* (1999) 71 Cal.App.4th 519, 521 [no statutory language "states the advisements must be verbal, only that they must appear on the record"]; *People v. Gutierrez* (2003) 106 Cal.App.4th 169, 175 [court may rely on executed form]; *People v. Quesada* (1991) 230 Cal.App.3d 525,

---

administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).)

10

533–534 [admonition need not be given orally].) "The advisement need not be in the exact language of section 1016.5 and can be in writing. Substantial compliance is all that is required." (*People v. Araujo* (2016) 243 Cal.App.4th 759, 762.)

We agree with the cases holding that section 1016.5 is satisfied if the written advisement appears in the appellate record and the court questions the defendant to ensure he understood the advisements and had the opportunity to discuss immigration consequences with counsel. Appellant does not dispute that the court asked him if he discussed the waiver form with counsel, whether he understood it, and if he had any questions. The record shows that appellant was specifically advised in the waiver form that he would be deported. Appellant cannot show prejudice because he was properly advised.

**Analysis Under Section 1473.7**

Section 1473.7 authorizes a motion to vacate a conviction or sentence by someone who is no longer imprisoned. Relief is appropriate when "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Id.,* subd. (a)(1).)

The court must vacate a conviction if a preponderance of the evidence shows prejudicial error affecting the moving party's ability to meaningfully understand the actual or potential consequences of a guilty or no contest plea. (*People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*).) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a

11

reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Id.* at p. 529.)

On appeal, we exercise our independent judgment to determine if the facts satisfy the statute; however, "[i]n section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar, supra,* 11 Cal.5th at pp. 527–528.)

When courts assess whether a defendant would have rejected a plea, they consider the totality of the circumstances, which "include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra,* 11 Cal.5th at pp. 529–530.) Appellant must corroborate factual assertions with " ' "objective evidence." ' " (*Id.* at p. 530; *People v. Espinoza* (2023) 14 Cal.5th 311, 316, 321 (*Espinoza*).)

The trial court found that appellant understood the immigration consequences of his plea. It expressly noted that it had "the opportunity to observe [appellant's] demeanor" and found that "his testimony was not credible." We defer to the court's credibility assessment. (*Vivar, supra,* 11 Cal.5th at pp. 527–528; *In re Long* (2020) 10 Cal.5th 764, 774.)

The court "[did] not find credible" appellant's testimony that he had no idea he could be deported because of his criminal case. He testified, twice, that he knew he could be deported "at any time" due to his lack of legal status. The court found "not credible" appellant's testimony that no interpreter translated the

12

waiver form into Spanish because the reporter's transcript shows that it *was* translated. It wrote, "In view of the objective evidence of the actual advisement and the potential for a greater penalty after trial, the Court does not find his testimony credible that he would have gone to trial had he been properly advised of the immigration consequences." Appellant "received a substantial benefit from the plea agreement" in that his six-year sentence was far below the statutory maximum of 28 years.

Appellant's attorney testified to his belief that he reviewed with appellant the report of the victim's sexual abuse exam. The court did not credit appellant's testimony that he did not see the report. He also heard the victim testify at the preliminary hearing. The police report showed that his wife moved out of the home with the children when she learned he abused her daughter, before the victim reported it to authorities; she rejoined him when he promised it would not happen again.

In light of this evidence—with a victim who described years'-long abuse in detail and reported it to her mother—it was rational for appellant to reach a plea agreement. There is no evidence showing that he focused on deportation, rather than securing a shorter prison sentence. The record of the plea hearing shows no questions from appellant indicating concern about possible deportation.

If a defendant says at a plea hearing that deportation would affect his decision, and counsel assures him that "the Government would not deport him if he pleaded guilty," this contemporaneous evidence of his desire to avoid deportation can be a basis to withdraw a guilty plea. (*Lee v. United States* (2017) 582 U.S. 357, 360, 369 (*Lee*) [137 S.Ct. 1958, 198 L.Ed.2d 476].) "Courts should not upset a plea solely because of *post hoc*

13

assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." (*Id.* at p. 369.) This is particularly true if the defendant's testimony lacks credibility. (*People v. Garcia* (2022) 79 Cal.App.5th 1059, 1066–1067.)

Appellant was deported upon completion of his sentence, yet did not seek relief for a decade. From this, it can be inferred that appellant knew the consequences of his plea and accepted them. In *Vivar,* by contrast, Vivar promptly sought relief; within a month of sentencing, he wrote letters to the court objecting to an immigration hold. This was contemporaneous evidence that avoiding deportation was important to him. (*Vivar, supra,* 11 Cal.5th at pp. 520–522, 530–531.) No contemporaneous evidence supports a finding that appellant was concerned about deportation, unlike the defendants in *Vivar* and *Lee*, *supra*, 582 U.S. 357.

Relief may be appropriate if an expert declares that the defendant could have pleaded to "immigration-safe dispositions." (*Espinoza, supra,* 14 Cal.5th at pp. 321, 325.) Appellant presented no evidence that such a plea was available when he faced four felony charges of sexually abusing a child.[4] The possibility of an immigration-safe plea is pure speculation.

We acknowledge appellant's testimony that he came to the United States in 1996, married an American, has two American children, and worked at a restaurant until his arrest in 2009. He testified that he knew he lacked legal status when he arrived

---

[4] Deportation is federally mandated for crimes of moral turpitude and aggravated felonies. (8 U.S.C. § 1227(a)(2)(A).)

here as an adult, and knew he could be deported "at any time." His situation is unlike that described in other cases.

For example, in *Espinoza*, the defendant entered the United States at age 13, was "a lawful permanent resident," and his attorney "did not mention" that his plea for manufacturing drugs would have immigration consequences and assured Espinoza that " 'everything was going to be fine.' " (*Espinoza, supra*, 14 Cal.5th at pp. 317–318; see *People v. Lopez* (2022) 83 Cal.App.5th 698, 706 [defendant came to the U.S. at age 13]; *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 [defendant came to the U.S. at age 14].) The defendant in *Vivar* came to the United States at age six, was here 40 years, and had no ties to Mexico. (*Vivar, supra,* 11 Cal.5th at p. 530.)

Appellant did not come here as a child, was not a lawful permanent resident, and was advised that his plea "will result in my deportation." Counsel testified that he did not tell appellant that he would not be deported.

By contrast, in *People v. Manzanilla* (2022) 80 Cal.App.5th 891 and *People v. Curiel* (2023) 92 Cal.App.5th 1160, the plain language in the waiver form was undermined by inaccurate advice. There was contemporaneous objective evidence substantiating the defendants' claims of misunderstanding immigration consequences. In *Manzanilla,* counsel advised that the plea would " '[change] his status [and] he [would] have [an] immigration hearing' . . . to avoid actually stating that deportation would ensue," and Manzanilla told the court directly that he would not plead guilty if he would be deported. (*Manzanilla*, at pp. 900, 905–906.) In *Curiel*, counsel misrepresented that avoiding jail time would avoid adverse immigration consequences like deportation. (*Curiel*, at pp. 1176–

1177.)  In *Lee, supra,* 582 U.S. at page 361, the defendant repeatedly asked if he would face deportation; counsel incorrectly assured him that he would not.

We conclude that no prejudicial error occurred when appellant's plea was taken in 2010.  He heard the victim's testimony, was advised of the immigration consequences of his plea, voiced no concern, faced a long prison term if convicted, and nothing indicates he could secure an immigration-safe disposition for sexually abusing a child.  No contemporaneous evidence shows a misunderstanding.  His motion was properly denied.

## DISPOSITION

The postjudgment order denying appellant's motion to withdraw his plea and vacate judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.

16